## McCROSKEY *v.* HAMILTON *et al.*

1. An agent with general powers has authority to use all the means usual and necessary to the proper transaction of the business entrusted to him. To this end he *may, ordinarily, constitute another person his servant for the purpose of doing an act, or acts, the performance of which does not involve the exercise of discretion but merely obedience to the master's orders.

2. Under a lease stipulating for the monthly payment of a specified sum as rent, and that, "should any payment fail to be made at or within thirty days after its maturity, the lease may be terminated at the option of" the landlord, a demand for possession of the premises, made immediately after a failure to pay a month's rent which had been due for more than thirty days, was, in substance. an exercise of such option, although at the time of demanding the rent for that month the rent for the succeeding month, which though due had not been so for thirty days, was also demanded.

Argued May 24, — Decided August 2, 1899.

Dispossessory warrant.    Before Judge Lumpkin.    Fulton superior court.    September term, 1898.

*Reed & Hartsfield,* for plaintiff.
*D. S. Craig* and *Hamilton Douglas,* for defendant.

LUMPKIN, P. J.    On the 15th of January, 1896, Mrs. Mc-Croskey made a lease to J. S. and K. S. Hamilton of certain realty.    It, among other things, stipulated that the tenants were to pay each month a specified sum as rent, and that "should any payment fail to be made at or within thirty days after its maturity, the lease may be terminated at the option of the party of the first part."    The Hamiltons made a default in paying the stipulated rent for a particular month, and as to it were in default for more than thirty days.    Thereupon an affidavit

was made by one Rustin, who in so doing acted as agent for Mrs. McCroskey, for the purpose of obtaining a warrant to dispossess the tenants. In this affidavit it was alleged that "the said tenants failed to pay the rent now due" on the leased premises, and that they were holding the same over and beyond their term. Accordingly a warrant was issued and placed in the hands of the sheriff, to whom the Hamiltons tendered a counter-affidavit, simply alleging that the term for which they had rented the premises had not expired, and that they were not holding over and beyond the same. The papers were returned to the superior court, and the case duly came on for trial. The lease contract was introduced in evidence, and the following facts were proved by the plaintiff: One Girardeau was her renting agent. As such he leased the property in controversy to the defendants. He collected the rents until default in paying them was made. The plaintiff, shortly after the contract was closed with the defendants, instructed him not to allow the rent to run beyond thirty days without collecting it or getting possession of the premises. She told him, with reference to the thirty days clause in the lease, not to let it run longer, but in case of default to immediately dispossess the tenants. Girardeau, in pursuance of his instructions from Mrs. McCroskey, sent his "bookkeeper, office-man and collector," Rustin, to make a demand for the rent. At that time the rent for two months was due, and as to one month had been due for more than thirty days. Rustin demanded the rent for both these months. There was no payment, and he thereupon demanded possession of the premises, which was refused, and the dispossessory warrant was sued out.

At the conclusion of the evidence the defendants moved for a nonsuit. In support of their motion it was insisted, (1) that as the first ground for removing the tenants set forth in the plaintiff's affidavit had not been met or denied by the counter-affidavit, the sole issue for trial in the superior court was whether or not the plaintiff was entitled to dispossess the defendants under the second ground contained in her affidavit, viz., that the tenants were holding over and beyond their term; and (2) that the plaintiff had failed to establish the truth of

this ground.   On the other hand, counsel for Mrs. McCroskey
contended that the case should be submitted to the jury, in
order that she might recover the double rent to which they in-
sisted she was entitled under the statute.   The court, being of
the opinion that the reasons urged by counsel for the defend-
ants for the granting of a nonsuit were both good, sustained
their motion.   It will thus be seen that no effect whatever was
given to the plaintiff's contention that the tenants should be
dispossessed for non-payment of rent; and, under the ruling
made by the trial court, her allegation as to this matter, which
was fully established by evidence, counted for nothing.   The
plaintiff might have moved to strike the counter-affidavit as
insufficient in law, but she did not choose to pursue this course;
nor did the judge of his own motion decline to try the case on
the ground that the counter-affidavit was not sufficient to have
arrested the progress of the plaintiff's warrant.   Both court and
counsel dealt with the case as one to be disposed of by a jury,
and accordingly the plaintiff submitted evidence to establish
both grounds set forth in the affidavit to dispossess.   She proved
the first; but as the truth of it was not denied by the defendants,
his honor thought she was not entitled to recover double rent
unless the evidence warranted a finding in her favor upon the
question at issue actually made by the pleadings.   Assuming
that this was the correct view of the matter, the case turns upon
the inquiry, did the plaintiff prove that the defendants were
holding the premises over and beyond their term?   We think
she did.   The reasons urged to the contrary may be briefly
stated as follows: (1) Rustin was not Mrs. McCroskey's agent,
but a mere subagent of Girardeau, and, therefore, without au-
thority to declare in her behalf a forfeiture of the lease; and
this being so, forfeiture could not result from a subsequent
ratification by her of his acts.   (2) He was not instructed by
Girardeau, his principal, to declare a forfeiture; and, even if he
was, did not in fact undertake to do so, his demand for two
months' rent being inconsistent with such a purpose, but, on the
contrary, entirely consistent with a design to allow the tenants
to remain in possession.   The conclusions of fact embraced in
the foregoing summary are not, in our opinion, warranted by

the evidence in this case. It may be true, as matter of law, that if Rustin's acts at the time he demanded the rents and the possession of the premises were wholly unauthorized, a subsequent ratification of them by Mrs. McCroskey would not establish by relation a notice to the Hamiltons to give up the premises. 1 Am. & Eng. Enc. L. (2d ed.) 1194. "The reason is that the tenant must act upon the notice at the time it is given, and it must, therefore, at that time, be such a notice as he can act upon with security; and if authority by relation were sufficient, the tenant would be subjected to the injustice of being left in doubt as to his action until the ratification or disavowal of the principal." Brahn v. Jersey City Forge Co., 38 N. J. L. 74.

We agree with counsel for the defendants in error, that Rustin was not acting in the capacity of agent for Mrs. McCroskey, and consequently we do not think that the doctrine of ratification is applicable. As to this branch of the case, our views are as follows: Girardeau was unquestionably Mrs. McCroskey's agent, and as such was not only authorized but expressly directed to declare the lease forfeited upon non-compliance with its terms. He certainly could, in his own proper person, have exercised the authority conferred upon him by his principal. We are quite clear he could also do so by using his servant, and that as to this matter Rustin was nothing more. He was not, in any proper sense, a subagent of Girardeau, but a mere instrument. On this occasion he simply acted as the messenger of his employer. The relation between Girardeau and Rustin was plainly that of master and servant. Girardeau, as agent for Mrs. McCroskey and in attending to her business, surely had the right to avail himself of the services of his own servant as a means for accomplishing the end in view. "It is a general principle that an agent's authority is construed to embrace all the means usual and necessary for its proper execution." 1 Am. & Eng. Enc. L. (2d ed.) 979–980. "A deputy possessing general powers may, in many cases, constitute another person his servant or bailiff, for the purpose of doing some particular act; provided, of course, that such act be within the scope of his own legitimate agency." Broom's Legal Maxims (7th ed.), 841. And see the instances, pertinent

here, which this great author gives of the application of this rule. Girardeau, representing Mrs. McCroskey, could have sent to the Hamiltons by Rustin a written demand for the rent which had been due for more than thirty days, and could have stated therein that, in case of non-payment, they might understand that the lease was at an end. Instead of doing this, he sent Rustin to the Hamiltons with instructions what to do; and we shall presently undertake to show that this was, in substance, the same thing as sending a written demand and notice of the kind just indicated. The distinction between "servant" and "agent" is clearly pointed out in Mechem on Agency, § 2, and Wharton on Agency, § 19. According to these authorities, an agent has more or less discretion, while a servant acts under the master's control and direction. Clearly, Rustin was not invested with any discretion. He was simply to do as he was bid.

The next question is: Did Girardeau direct Rustin, in case the demand for the rent was not complied with, to declare a forfeiture of the lease? It does not appear that Girardeau did this in so many words, but we think there was enough proof on this subject to warrant a jury in finding that this was what Girardeau told Rustin to do, and that the latter so understood his mission to the Hamiltons. The evidence shows that Girardeau, in pursuance of his instructions from Mrs. McCroskey, sent Rustin to make a demand for the rent. Those instructions were to immediately terminate the lease and take possession of the premises if rent which had been due for more than thirty days was not paid. Rustin seemed to understand thoroughly the business on which he was sent, for he demanded payment of the rent, and payment having been refused he then demanded possession of the rented property. Putting these things all together, there is not much room for doubting that Rustin did exactly what he was sent to do.

There is yet another question to be dealt with. It is: Were the demands made by Rustin the equivalent of a notice to the Hamiltons that Mrs. McCroskey was exercising her option to terminate the lease and bring the tenancy thereunder to an end? In an opinion filed by his honor of the trial bench, after

stating that Rustin demanded not only rent more than thirty days past due but also rent not this long in default, he says: "This was rather in the nature of insisting on a continuation of the lease than its termination." We can not concur in this view. No demand whatever for payment of rent was essential to declaring a forfeiture of the lease. All that was necessary to this end was a mere notice that Mrs. McCroskey had elected to avail herself of her option to terminate it. What, then, was the effect of a demand for all the rent due under the terms of the contract? Plainly, that if payment thereof in full should be immediately made, she was willing to waive her right to declare a forfeiture. Demanding the two months' rent was entirely consistent with the idea of making such a waiver, and a consequent continuance of the tenancy, if her demand was at once complied with. This demand was, however, refused; and if matters had stopped there, the Hamiltons might have been justified in inferring that they would be still further indulged. But Rustin did not stop with demanding the rent. When payment thereof was refused, he at once made an unequivocal demand for the possession of the premises. What, under the circumstances, did this demand mean? It could mean nothing but that the lease was to be considered by the Hamiltons as terminated. They must therefore have fully understood, when on their refusal to pay anything Rustin demanded possession of them, that the demand was based upon and made under the terms of their contract of lease. We therefore think they were fairly notified of Mrs. McCroskey's determination to exercise her option, therein contained, to declare a forfeiture; for they unquestionably knew they had failed to pay rent as stipulated, that they had been in default for more than thirty days as to one month's rent, and accordingly that she was entitled under the contract to demand immediate possession. The only right which they could assert was under and by virtue of their lease. The mere fact that Rustin asked for another month's rent should not be treated as evidencing an intention not to declare a forfeiture. It was proper to ask for it, if the Hamiltons were to remain on the premises. It was due and should have been paid. Demanding payment thereof

was not at all inconsistent with the idea that, if payment was refused, Mrs. McCroskey would immediately exercise her right to bring the tenancy to an end, as she undoubtedly had a right to do because the rent for the previous month had not been paid and default in the payment thereof had continued for a period of more than thirty days. Nor; simply because a demand for all the rent then due was made, can it be said that Mrs. McCroskey was estopped from claiming a forfeiture. She simply made an offer to waive her right to exercise her option to terminate the tenancy, provided the Hamiltons, by acceding to the demand made upon them for rent, displayed a willingness to thereafter live up to the terms of their lease. As they, by their refusal to pay all the rent payment of which was demanded as a condition precedent to such waiver, declined to accept the offer thus made them, they are not in position to contest the right of Mrs. McCroskey to insist that under the terms of the contract she was entitled to claim a forfeiture. In this connection, see *Sullivan* v. *Connecticut Indemnity Assn.*, 101 *Ga.* 809, wherein the principle just announced was applied under a similar state of facts, and it was said : "To hold otherwise, it seems to us, would be going contrary to the plainest principles of right and justice. At most, it could only be fairly said that the association had *offered* to waive the conditions expressed in the policy, and that the insured had declined to accept the offer."

*Judgment reversed.    All the Justices concurring.*