GRAY et ux. v. VOGELSANG.    (No. 8079.)

(Court of Civil Appeals of Texas. Galveston. Dec. 2, 1921.)

**1. Landlord and tenant ⬌152(7)—Delay on part of tenant in making repairs held not unreasonable.**

Under a lease made January 27, 1919, and providing that certain repairs and improvements would be made by the lessor and that the lessee would secure the material and labor and have the work done, where some of the material was obtained in June and the work was begun on July 29th and the improvements completed on September 16th, the delay *held* not unreasonable in view of the high cost of labor and materials, the excessive rain, and other circumstances.

**2. Appeal and error ⬌395, 878(1) — Defendants, who appealed but did not file bond or affidavit, not entitled to offer objections to judgment.**

Where plaintiff and certain defendants gave notice of appeal, but the appealing defendants did not perfect their appeal by filing bond or affidavit in lieu thereof, and plaintiff's appeal bond was payable only to the nonappealing defendant, the appealing defendants were not before the court, and no objection to the judgment urged by them could be considered.

**3. Cancellation of instruments ⬌43—Misrepresentations not pleaded, not ground for canceling lease.**

Representations by a lessee in procuring a lease that business was poor and there were several empty business houses, etc., *held* not to authorize a cancellation of the lease, where the misrepresentations pleaded were that the lessee desired to purchase the property and was able to pay the rents and purchase the property, and that occupants of one of the buildings were doing business on borrowed capital and would have to go out of business and were not able to purchase the property or give any reasonable guaranty of their ability to pay rent, etc.

**4. Landlord and tenant ⬌103(1)—Common-law rule as to demand as condition precedent to forfeiture is in force.**

Under Rev. St. art. 5492, adopting the common law of England, so far as not inconsistent with the Constitution and laws of the state, the common-law rule that a landlord could not forfeit the lease for failure to comply with its provisions without first making demand on the tenant for performance is in force in Texas as a rule of decision.

**5. Landlord and tenant ⬌283—Requisites of demand to maintain entry or ejectment for nonpayment of rent stated.**

By the common law, unless there are express words in the lease or agreement dispensing with a formal demand for rent, no entry or ejectment can be maintained by the landlord for nonpayment of rent unless there has been a formal demand by the landlord or his duly authorized agent on the very last day to save the forfeiture, at a convenient time before sunset and continuing actively or constructively until sunset, and made at the place specified in the lease or agreement for payment of the rent.

**6. Landlord and tenant ⬌108(1)—Lease held not to authorize cancellation for nonpayment of rent without demand.**

A lease providing that, if there should be any default in the payment of rent or in any of the covenants therein contained, it should be lawful for the landlord to declare the contract canceled and terminated, and to re-enter the premises and remove all persons therefrom, etc., did not waive demand, and, in the absence of any demand, the landlord was not entitled to recover possession because of nonpayment of rent.

Appeal from District Court, Fort Bend County; M. S. Munson, Judge.

Suit by Jacob Gray and wife against L. A. Vogelsang and others. From a judgment for the defendant named, plaintiffs and the other defendants appeal. Affirmed.

See, also, 224 S. W. 535.

J. M. Gibson and C. I. McFarlane, both of Richmond, for appellants.

D. R. Peareson, of Richmond, and Wolters, Storey, Blanchard & Battaile, of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by Jacob Gray and wife against appellee Vogelsang and appellants Neuman & Kirmse, a firm composed of J. J. Neuman and Robert Kirmse, to recover possession of the west 70 feet of lots 6, 7, and 8 in block 35 in the town of Rosenberg, with the improvements thereon, and to cancel a lease of said premises to defendant Vogelsang theretofore executed by plaintiffs.

By their pleadings in the court below plaintiffs and the defendants Neuman & Kirmse joined issues against the defendant Vogelsang, and both sought judgment against him canceling the lease and giving possession of the premises to plaintiffs as owners and to Neuman & Kirmse as tenants of plaintiffs to a portion thereof.

The grounds upon which a cancellation and forfeiture of the lease is claimed are fraud and misrepresentation in its procurement and the failure of defendant to comply with its terms in regard to the payment of rent and the making of improvements upon the premises.

Plaintiffs also sought recovery against defendant Vogelsang of rents for the premises from March 1, 1917, and Neuman & Kirmse by cross-bill asked for damages against Vogelsang for injuries caused them by proceedings in an action of forcible en-

---

⬌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

try and detainer brought against them by said defendant.

They further pleaded in the alternative that if it should be found that the lease had not been forfeited by Vogelsang and that plaintiffs were not entitled to its cancellation, that they have judgment against plaintiffs for the rents which they had paid them as tenants of a portion of the premises. They also asked for an injunction restraining the defendant from ejecting them from the premises, or from in any way interfering with their possession. Plaintiff also asked for a similar injunction.

Pending the final hearing, a temporary injunction was granted as prayed for by plaintiffs and defendant Neuman & Kirmse.

The answer of defendant Vogelsang denies generally and specially the allegations of the petition of plaintiffs and answer and cross-bill of their codefendants, by pleas in reconvention asks recovery against plaintiffs of amounts expended by said defendant in improvements upon the premises under his lease contract with them, and against defendants Neuman & Kirmse for possession of the portion of the premises occupied by them, and for rents due therefor from July 1, 1919.

In answer to the allegations of failure to comply with the provisions of his lease in making improvements on the premises and monthly payments of rent, the answer contained the following averments:

"That it is true, as alleged in plaintiff's petition, that defendant made no payment at said bank or to Jacob Gray until the 25th day of July, 1919, at which time he delivered to the J. H. P. Davis & Co. Bank of Rosenberg, Tex., past-due rents, as hereinbefore set out; that this defendant had occupied said premises, or a portion thereof, under lease from the said Jacob Gray, who was then and who has been a nonresident of Texas since April, 1916; that it had been customary for him to make payment of said rentals at irregular intervals, and that Jacob Gray acquiesced in such custom; that the said Jacob Gray, by his said conduct in not making demand and compelling prompt payment of said rentals, led this defendant to believe that said provision of said lease hereinbefore set out would not be strictly enforced, and that relying on such custom the defendant failed to make such payments on the due dates thereof and because the said Gray has been continuously, as he is now, a nonresident of Texas; that this defendant has been at all times willing, ready, and able to make prompt payment of said rentals when due.

"That shortly after the execution of said contract this defendant made due inquiry for labor and material to be utilized in making the repairs provided to be made in the foregoing portion of said contract, but found that some of the material was very high in price, that some of the material could not be procured at any price, and that labor could not be procured at a reasonable price. The cost price of said material and the price of labor necessary to make such repairs was not only very high, but was unreasonably so, and defendant finding that such repairs could not be made for a reasonable price, deferred the making of such repairs from time to time, awaiting the time when the same could be made at reasonable price, and deferred making payments of the rents for said property for the purpose of utilizing same to pay the cost of making such repairs contemplated to be made by the terms of said contract, as he had the right to do, and because said Gray had no one at Bank of Davis & Co. in Rosenberg to receive said rental. This defendant had no intention of defaulting in either the payment of installments of rent or in having said repairs made, and he has been willing and able at all times to pay said installments of rent and to have said repairs made, but on account of the aforesaid acts of the plaintiffs, their failure to make demand for the rent and for construction of repairs, and the condition of the market as to labor and material necessary to be used in making said repairs, he had refrained from so doing.

"Defendant further alleges that, as above stated, he on or about July 25, 1919, tendered the sum of $540 at the Bank in Rosenberg, Tex., of J. H. P. Davis & Co., in payment to the plaintiffs of said rentals for the months of March, April, May, June, and July, 1919, and left said sum of money on deposit at said bank to the credit of the said Jacob Gray, and subject to his order; that thereafter on August 1, 1919, he made a similar tender of said bank of $100 in payment of the rental for said property for the month of August, 1919, and left said money on deposit with said bank to the credit of the said Jacob Gray, to be applied as aforesaid. This defendant further alleges that on or about September 1, 1919, he tendered $100 at said bank to said Jacob Gray in payment of rental for said property for the month of September, 1919, but the said bank refused to accept said amount, and no one appearing at said bank to receive the said sum of money, this defendant was unable to pay same, but he has been ready and willing at all times so to do. Defendant further alleges that on the 1st day of each month subsequent to the 1st day of September, 1919, up to the present time, he has made a similar tender of said sum of money at said bank to Jacob Gray, and has on each of said dates been willing and able and ready to pay said rentals, but was unable so to do on any of said dates because the said Gray had no one at said bank to receive said payments. Defendant further alleges that by reason of the foregoing facts the said plaintiffs have waived any and all right to declare a forfeiture for nonpayment of rent, if any right did exist, which is expressly denied, and that by reason of said facts hereinbefore set forth the said plaintiffs are here now estopped from declaring such forfeiture.

"This defendant further alleges that in accordance with the terms of said lease contract, at the first available opportunity he commenced the repairs of said buildings contemplated by said contract, and has had repaired the roof of the gallery in front of the buildings on said premises and has had a new roof placed on said buildings. He has also had the alley back of the buildings cemented over, and has had down spouts placed on said building at various places with tile connections, also plate glass windows. The defendant alleges that the old

roof on said building was in such condition of decay and insufficiency that it could not reasonably be repaired, and it was necessary, in order to protect the said building, to place upon the buildings on said premises a complete new roof. The defendant says that the repairs made by him, including the said new roof, were made at a reasonable cost, and said repairs were necessary, and he attached thereto 'Exhibit A,' showing in detail the cost of making said repairs, which aggregate the sum of $1,468.29.

"Defendant further alleges that after the plaintiffs failed to accept his tenders of rentals, as above alleged, he applied the said rentals to the payment of the amount of the cost of said repairs, which said payments to this date amount to $1,400, to which is added materials returned $66.34, leaving owing to the defendant the sum of $1.85, which should be applied to the payment of rentals on said buildings as same accrue. Defendant further avers that in said lease contract it is provided that the expense of making such repairs were to be deducted from any rents due or to become due and allowance made therefor by plaintiffs."

Upon the trial in the court below with a jury, after hearing all the evidence, the court instructed the jury to return a verdict for the defendant Vogelsang, and upon the return of such verdict judgment was rendered in accordance therewith, that plaintiffs take nothing against the defendant Vogelsang, and that said defendant is entitled to the possession of the premises under the terms of the lease contract pleaded, and judgment was also rendered in favor of Vogelsang against the defendants Neuman & Kirmse for possession of the portion of the premises occupied by them.

From this judgment plaintiffs and Neuman & Kirmse gave notice of appeal, but no appeal bond or affidavit in lieu thereof has been filed by Neuman & Kirmse.

The record discloses the following facts: The premises in controversy are owned by the plaintiffs. There are two two-story buildings on the property. Appellee as a tenant of plaintiffs was, on January 27, 1919, and had been for several years prior thereto, in possession of the east building and the second story of the west building, and the defendants Neuman & Kirmse were in possession of the lower story of said west building under a lease from plaintiffs which expired on February 28, 1919. On the day first named, plaintiffs, as party of the first part, and appellee, as party of the second part, executed a lease contract which, after describing the leased property, contains the following provisions:

"For and in consideration of the above premises the said party of the second part agrees to pay to the said party of the first part the yearly rent of $1,200.00 a year at J. H. P. Davis & Co. Bank, Rosenberg, Texas, due and payable monthly in advance as follows: $100.00 due and payable on the first day of March, A.

D. 1919, and on the first day of each and every consecutive month thereafter until paid.

"Should there at any time be any default in the payment of any rent or any of the covenants herein contained then it shall be lawful for the party of the first part to declare this contract canceled and terminated, and to reenter said premises and remove all persons therefrom, without prejudice to any legal remedies which may be used for the collections of rent, all and every claim for damages for or by reason of said re-entry being hereby expressly waived.

"At the expiration of this lease the party of the second part agrees to quit and surrender the said premises in as good state and condition as reasonable use or wear thereof will permit.

"The party of the second part shall, in case of fire, give immediate notice to the party of the first part, who shall thereupon cause the damage to be repaired forthwith. But if the premises be by the party of the first part deemed so damaged as to be unfit for occupancy, or he shall decide to rebuild, the lease granted shall cease and rent be paid up to the time of the fire or storm.

"The party of the second part reserves the right to sublet said premises or any part thereof.

"It is expressly understood and agreed that the party of the first part will repair said buildings, that is, the roof of the gallery in front of same, the roof of the buildings if they can be repaired, if not a new roof is to be put on said buildings, if the old ones cannot be repaired. The alley back of said buildings is to be filled with broken tile or cemented whichever it is deemed best by the party of the second part. The water is also to be drained away from the building, if there is an outlet. The party of the first part agrees to repair the windows and one plate glass in the corner building.

"It is also expressly agreed that an archway may be cut through the partition walls of said buildings where the party of the second part deems best. The water spouts are also to be repaired. All of said material and labor and expense incident to making the above mentioned repairs and alterations shall be paid for by the party of the first part, the same may be taken out of the rent by the party of the second part. The party of the second part agrees to secure said material and labor and bids and to have such work done as reasonable as possible and to furnish the party of the first part bills for all expense.

"It is also expressly understood and agreed that the party of the second part shall have the right and he is hereby granted the option and privilege of purchasing the above-described property at any time during the term of this lease, for and at the sum of $11,500, on the following terms: One-half cash and the balance in one, two, three years after date of deed, deferred payments to bear interest at the rate of 6 per cent. interest payable annually. The notes to be in the usual form of vendors' lien notes, and secured by a first lien on said premises. It being understood that if the party of the second part purchases said premises his obligations to pay rent shall discontinue, and be at an end when deed is delivered.".

The only evidence of any representation made by appellee in procuring the lease are the following statements in the testimony of the plaintiff Jacob Gray:

"L. A. Vogelsang represented that there were several business houses empty in the business part of town of Rosenberg, Tex., and that everything was on the 'bum,' and that all the northern men had sold out and left the country. * * *

"The representations made by Vogelsang to me were made in a conversation we had in my home here in Butler county, Mo., along in January, 1919; that was the time he told me about several business rooms being vacant in Rosenberg, Tex., and that the northern men had sold out and left the country. As stated, Mr. Vogelsang came to my home in Butler county, Mo., and wanted to rent my buildings in Rosenberg, Tex. He told me that there were some window lights out in the buildings upstairs, and the roof on the porch needed patching. While he was here we outlined the terms of the lease, and then he left, and later I received the lease I executed, in which I first made a few slight changes. I have not seen Mr. Vogelsang since the time he was here to see me about leasing the property. He told me he was in shape financially to carry out any contracts he made, and he also stated that Neuman & Kirmse had very little money, and that they were doing business on their friends' money. That is about all I can remember of what he stated to me at that time. The reason that prompted me to make this lease to L. A. Vogelsang was upon his representations of bad crops; bad conditions in business generally down there. I entered into this contract with L. A. Vogelsang because he said Neuman & Kirmse would not keep the stair door locked, and the public was making a closet out of the stairway; that was the outside stairway to both buildings. No one offered to lease it prior to the time I saw L. A. Vogelsang, nor since that time. Neuman & Kirmse did not apply for a lease to a part of said premises."

The only allegations of fraud and misrepresentations contained in plaintiffs' petition are:

"(3) Plaintiffs would further show that some time prior to the 1st day of January, 1919, the said defendant came to the plaintiffs at their home in Butler county, Mo., and then and there fraudulently and falsely represented to the plaintiff Jacob Gray that he desired to purchase the said property alleged above, and that he desired to obtain a lease contract upon said premises for both buildings, commencing the 1st day of March, 1919, and to continue for three years, and the said L. A. Vogelsang fraudulently and falsely represented that the said Newman & Kirmse, who were occupying one of the buildings of said premises, were doing business upon borrowed capital, and that they were not able to enter into a contract to purchase said property, or to give any reasonable sort of guaranty to be able to pay continuously the rent for said premises, and that at any time the said Neuman & Kirmse would have to go out of business and were unable to conduct a paying establishment there, and the said premises were likely to become vacant and the plaintiffs would lose their monthly rentals therefor and be without a tenant; that he (L. A. Vogelsang) was able to pay the rents as the same accrued upon said premises, and would be able to purchase the title to said property, said plaintiffs desiring to sell the same.

"(4) The plaintiffs show that the said L. A. Vogelsang was working upon the fears of the plaintiffs by these false and fraudulent representations, that by these means he persuaded the said plaintiffs to execute and deliver to the said defendant Vogelsang a certain marked 'Exhibit A' and made a part of this petition, in which said premises were leased to the said Vogelsang for a term of three years, beginning March 1, 1919."

After obtaining his lease from plaintiffs, appellee notified Neuman & Kirmse that he had leased and would want to occupy all of the premises. He declined to make them any lease except one from month to month. They paid Vogelsang $60 a month at first, but this amount was raised to $75, and when he notified them of a further raise in the rent they refused to pay him any more, and learning at that time that plaintiffs were claiming a forfeiture of the lease, they attorned to plaintiffs and resumed the payment of rent to them. Appellee made no payment of rents on his lease contract until July 25 or 26, 1919, when he deposited $540 to plaintiffs' credit in the Davis bank at Rosenberg, which was the amount due up to August 1st, upon which date he again deposited in said bank to plaintiffs' credit $100 to cover rent for the month of August. On September 1st he made a tender to the bank of $100 to cover September rent, but the bank declined to receive it.

Plaintiffs, who live in the state of Missouri, were not at the bank at any time to receive these payments and had no agent there for that purpose.

On July 25, 1919, L. E. Gray, as agent of his father, Jacob Gray, placed in the post office at Rosenberg the following letter addressed to appellee:

"Dear Sir: You are hereby notified this the 25th day of July, 1919, that your lease contract is canceled and terminated, for having failed to keep the covenants of said lease contract, failure to pay the rent on the 1st of each month in advance and failure to have repairs on buildings made as specified in said contract.

"[Signed] Jacob Gray, by L. E. Gray."

On August 5 and September 18, 1919, respectively, appellee received the following letters:

"Rosenberg, Tex., August 5, 1919.

"Mr. L. A. Vogelsang, Rosenberg, Texas— Sir: There is no use for you to deny the fact that your lease contract is canceled. It is useless to carry it into the courts, for it would make unnecessary expense for both of us; however, if you will not surrender by the last of this week I will file suit to re-enter premises. If you want to rent the room you are in, with the room above, you can occupy them for $75.00

per month. The above amount is what I expect for them for the month of August.

"Yours truly, Jacob Gray, by L. E. Gray."

"Rosenberg, Tex., September 18, 1919.

"Mr. L. A. Vogelsang, Rosenberg, Texas— Dear Sir: This is to serve notice upon you that I have canceled our lease for store buildings located at Rosenberg, Tex., located upon the west ninety feet of lots 6, 7 and 8, in block No. 35, according to the map of the plan of Rosenberg, Tex., which appears on record in Volume P, page 146, of the Deed Records of Fort Bend county, Tex., which lease was dated the 27th day of January, A. D. 1919. The reason for my cancellation of this lease is your failure to live up to the same in the manner of paying rental as prescribed in rental contract.

"This notice is merely cumulative of written notice mailed you by me on July 25, 1919, and of other verbal notices served upon you in person, and you are demanded to surrender premises as provided for in your lease contract with me.

"Yours truly, Jacob Gray, by L. E. Gray."

The great weight of the evidence sustains a finding that the $540 was deposited by appellee before he received the letter of July 25th above set out; but there is evidence sufficient to raise an issue as to whether the payment or deposit was made before or after the letter was received.

The undisputed evidence shows that no demand for these past-due rents was made upon appellee, and that under the former contract of lease under which appellee held the property no insistence was ever made by plaintiffs for payments of rents on the dates they became due, and appellee with the acquiescence of plaintiffs had frequently been several months behind with his payments.

The undisputed evidence further shows that no demand was ever made upon appellee to make the improvements upon the premises provided for in the lease contract.

[1] There was a great deal of rain during the spring of 1919, the cost of labor and material was very high, and under all the circumstances the delay in making the improvements could not be held to have been unreasonable. Appellee obtained some of the material for the improvements in the first part of June and began the work on July 29th. The improvements were completed on September 16th, and the amount paid therefor by appellee and for which he received judgment against plaintiffs was shown to be reasonable.

Under our view of the law upon the controlling issues presented by this appeal, it is unnecessary to set out or discuss in detail the various assignments of error contained in appellants' brief.

[2] None of the assignments presented on behalf of the defendants Neuman & Kirmse can be considered by us, for the reason that these defendants are not before this court. They gave notice of appeal from the judgment, but did not perfect their appeal by filing bond or an affidavit in lieu thereof, and the appeal of the plaintiffs is not against them; plaintiffs' appeal bond being payable only to the defendant Vogelsang. Such being the state of the record, it is clear that Neuman & Kirmse are not before this court, and no objection to the judgment urged by them can be considered. Horter v. Herndon, 12 Tex. Civ. App. 637, 35 S. W. 80; Halsell v. Neal, 23 Tex. Civ. App. 26, 56 S. W. 137; Rhodes v. Harris, 194 S. W. 621.

We think the trial court was correct in holding that upon the pleadings and undisputed evidence plaintiffs were not entitled to a cancellation of the lease on the ground of fraud in its procurement, and that appellee had not forfeited his rights under the lease by his delay in making payment of the rents which accrued thereunder and in making the improvements provided for in the lease.

[3] As shown by the foregoing statement of the pleadings and evidence, the fraudulent misrepresentations which plaintiff Jacob Gray testified induced him to enter into the contract were not pleaded by the plaintiffs. If such misrepresentations were made and could be held to be sufficient to authorize a cancellation, not having been pleaded they could not support a judgment of cancellation.

[4, 5] It is a well-settled rule of the common law that a landlord could not forfeit the lease of his tenant for failure to comply with the provisions without first making demand upon the tenant for such performance. There is no statute in this state changing this rule of the common law, and it not being inconsistent with the Constitution or laws of this state, it is in force as a rule of decision in this jurisdiction. Article 5492, Revised Statutes. The common-law rule is thus stated in Wood on Landlord and Tenant (2d Ed.) vol. 2, p. 1202:

"No ejectment can be maintained for non-payment of rent unless there is some express condition or proviso in the lease or agreement giving the landlord a right to re-enter and determine the lease or tenancy for such nonpayment. The landlord must have a 'right by law to re-enter for nonpayment thereof.' Such condition or proviso may by express words dispense with the necessity of a formal demand of the rent; as where it says 'although no formal demand shall have been made thereof,' or to that effect.

"Unless there are express words in the lease or agreement dispensing with a formal demand of the rent, or the case falls within the above enactment, no entry or ejectment can be maintained for nonpayment of rent unless there has been a formal demand thereof made according to the strict rules of the common law. (1) The demand must be made by the landlord or by his agent duly authorized in that behalf. (2) It must be made on the very last day to save the forfeiture. Therefore, if the proviso for re-entry be on nonpayment of rent for thirty days after it becomes due, the demand must

be made on the thirtieth day after the rent became due (exclusive of the day on which it became due), and not on any other day before or afterwards. (3) It must be made a convenient time before and at sunset. It must be continued actively or constructively until sunset. (4) It must be made at the proper place. Therefore, if the lease or agreement specify the place at which the rent is to be paid, the demand must be made there and not elsewhere."

The reasoning of the common-law rule is predicated upon the theory that provisions for the termination and forfeiture of lease contracts and for re-entry are for the securing to the landlord of the payment of the rents specified and contracted to be paid, and that no forfeiture may be had and no lease contract terminated where the rents due are forthcoming upon due demand therefor. It is a salutary rule and inures to the benefit of all parties who seek to do equity in the premises.

A similar statement of the rule is found in 16 Ruling Case Law, p. 1127, and in 24 Cyc. pp. 1355 and 1404. The following cases, among many others which might be cited, announce and apply the rule: Connor v. Bradley, 1 How. 211, 11 L. Ed. 105; Prout v. Roby, 15 Wall. 471, 21 L. Ed. 59; Gage v. Bates, 40 Cal. 384; McCroskey v. Hamilton, 108 Ga. 640, 34 S. E. 111, 75 Am. St. Rep. 79; Taylor v. Brice, 34 N. E. 833, 7 Ind. App. 551; Moran v. Lavell, 32 R. I. 338, 79 Atl. 818, Ann. Cas. 1912D, 1007; Chapman v. Harney, 100 Mass. 353; Blackman v. Welsh, 44 Mo. 41; Godwin v. Harris, 71 Neb. 59, 98 N. W. 439, 8 Ann. Cas. 579.

[6] It is only in cases in which the lease contract contains an express waiver of demand that the common-law rule can be disregarded. The contract of lease in the instant case contains no such waiver. The contract provides:

"Should there at any time be any default in the payment of any rent or any of the covenants herein contained then it shall be lawful for the party of the first part to declare this contract canceled and terminated, and to re-enter said premises and remove all persons therefrom, without prejudice to any legal remedies which may be used for the collections of rent, all and every claim for damages for or by reason of said re-entry being hereby expressly waived."

There is no express waiver of demand in this provision. It only recognizes the right of the landlord to cancel the lease and re-enter the premises in event of default on the part of the lessee, and contains no stipulation that such cancellation and re-entry can be made without demand. The right of cancellation here recognized is the right to cancel in the manner provided by law, and the courts will not, in aid of a forfeiture, from the language here used imply a waiver of legal requirements. In discussing this question in the case of Godwin v. Harris, supra, the Supreme Court of Nebraska says:

"The only clause of the lease on which a forfeiture is claimed is, 'If the said rent be not paid promptly at the time that the same becomes due. then this lease shall at once terminate, and the party of the second part agrees to surrender the immediate possession of the same.' This clause, undoubtedly, would be sufficient at common law to warrant a forfeiture of the lease, if a demand were made with due formality of payment of rent on the day it became due and it were not paid. Does it waive such demand? If not, is the act of 1875 excusing such demand valid?

"There can be no question, and none is raised by the plaintiff, as to the fact that at common law a demand, with all due formalities, must be made on the day the rent becomes due and before the tenant enters upon another term. The cases cited by defendants' counsel abundantly establish that this demand is required at common law, unless expressly waived. Ordinarily, such waiver is contained in the words, 'without further notice or demand' in the provision for the forfeiture, as in the case of Pendill v. Union Min. Co., 64 Mich. 172, 31 N. W. 100. * * *

"We are constrained to think that, in the absence of a statute permitting demand and forfeiture for overdue rent at any time, plaintiff had no right of action for forcible detainer in this case."

In the case of Moran v. Lavell, supra, in which the forfeiture provision in the lease under consideration was very nearly identical with the provision in the lease we are considering, the court says:

"The claim of the plaintiff is stricti juris. He seeks to enforce the forfeiture; and courts always lean against penalties and forfeitures. To entitle himself to recover the possession of the leased premises, he must show that all necessary forms which the law has prescribed have been scrupulously observed. There must be a demand for the rent on the day it is due, at a convenient time before sunset. There is nothing in the terms of this lease to show that the common-law requirement of demand is waived or dispensed with. Where no place of payment is named, a tender upon the land is good, and prevents forfeiture. And if the lessor desires to enforce a forfeiture, he must demand the rent upon leased premises at the most notorious place. Chapman v. Harney, 100 Mass. 353.

"A myriad of other cases might be cited to the same effect, but it is not necessary to do so, in support of such an obvious and well-settled principle. The plaintiffs' counsel cites no case to the contrary, and we know of none such."

We think these authorities abundantly sustain our conclusion that the attempted cancellation of the lease by plaintiffs was ineffective because no demand had theretofore been made upon Vogelsang for the payment of the rents, and that plaintiffs are not, un-

der the undisputed evidence in this case, entitled to recover possession of the property.

This conclusion renders it unnecessary for us to pass upon the other assignments of error presented by appellants. If any error of procedure is shown by any of the assignments, it becomes immaterial in view of our conclusion that under the pleadings and evidence no other judgment could have been properly rendered.

It follows from the conclusions above expressed that the judgment should be affirmed, and it has been so ordered.

Affirmed.