## SHEPHERD v. SORRELLS.

### No. 2471.

Court of Civil Appeals of Texas. Eastland.

Oct. 6, 1944.

Thomas & Thomas, of Big Spring, for appellant.

C. F. Sentell, of Lubbock, for appellee.

LESLIE, Chief Justice.

F. O. Sorrells filed this suit in the Justice Court against J. C. Shepherd. From a trial and judgment in the Justice and County Courts, to which it was appealed, the cause comes to this court. The plaintiff sought damages by reason of the defendant's cattle having eaten his grass on a quarter section of land. He alleged that the defendant turned his stock in on the grass and that the trespass resulted in damages to him in the sum of $200. The defendant entered a general denial and a trial before the court and jury resulted in a judgment for the plaintiff.

The controlling question grows out of the superiority of their respective rights under two grass leases covering the same land and executed to them by the same owner thereof.

In this cause both Shepherd and Sorrells hold written leases from the landowners (designated as the Whittakers) to the southwest one-fourth of a section of land in Borden County. Shepherd's lease was for five years, dated January 29, 1938, and extending from January 1, 1938, to December 31, 1943.

Sorrells' lease was for three years, dated March 12, 1940, and extending from April 1, 1940 to April 1, 1943.

Shepherd's lease obligated him to pay an annual rental of $37.50 in advance on January 1st each year, and the Sorrells' lease bound him to pay $25 per annum in advance on April 1st of each year.

The forfeiture provision in the Shepherd lease is material in the disposition of this appeal and is as follows:

"4th. That on failure to pay the rent in advance, as aforesaid, or to comply with any of the foregoing obligations, or in violation of any of the foregoing covenants, the lessor may declare this lease forfeited at his discretion and his agent or attorney shall have the power to enter and hold, occupy and re-possess the entire premises heretofore described, as before the execution of these presents."

Shepherd defaulted in payment of his annual rent on January 1, 1940, and January 1, 1941, but on January 29, 1941, he paid the Whittakers by check $75, $37.50 of which was the rent under the five year contract "to January, 1942" (that is, for the year January 1, 1941 to January 1, 1942), as noted on the check, and the other $37.50 was for the rent under that contract from January 1, 1940, to January 1, 1941. In this manner all rents in arrears on the Shepherd lease were paid up and accepted by the lessors, the Whittakers.

While the above rents were in default of payment the lessors executed to Sorrells the above three year lease of date March 12, 1940, to take effect April 1, 1940. Hence, the controlling question is, which tenant's lease acquired or carries the superior right to the quarter section of grass in controversy?

While we are without the benefit of a brief by the appellee, it seems to be his theory that the forfeiture clause in the Shepherd lease above set out was automatic in effect, and that the failure of Shepherd to promptly pay his annual rents when they fell due on January 1st terminated his lease, leaving the Whittakers free to execute to him (Sorrells) the three year lease of March 12, 1940. That under such circumstances his three year lease vested in him a superior right to the possession of said quarter section of land and the grass thereon.

Shepherd resists said contention that his five year lease was ever forfeited for the nonpayment of rent when it fell due, or for any other reason. Essentially such contention by Shepherd is predicated on the proposition that although he defaulted temporarily in the payment of an annual rent, according to his contract, nevertheless he later paid same to the lessors and did so prior to any demand for said rent or notice of forfeiture by said lessors, who accepted the rent under the terms of the five year lease. That under such circumstances said lease maintained its original and superior rights to the land and grass over the junior three year lease of Sorrells.

Under the law and well established authorities in this state, this court is compelled to sustain the above contention by Shepherd. Evidently he was temporarily in default in the payment of his annual rent to the Whittakers, the common lessors, but the evidence conclusively shows that prior to any demand therefor or notice of forfeiture under that provision of the five year lease, the Whittakers accepted the $75 for all such rents in arrears and for the following year, down "to January, 1942." Sorrells presented no testimony establishing such demand and forfeiture and the Whittakers were not parties to the suit, nor did they testify. Under such undisputed facts no forfeiture of the Shepherd lease was ever shown to have taken place, and consequently there was never a time when Sorrells could safely pay his money to the Whittakers and legally acquire from them a lease with rights superior to those previously conveyed by the five year lease to Shepherd.

It is undisputed that Shepherd was in possession of the Whittaker quarter section when Sorrells acquired his lease. Sorrells himself testified on the trial:

"Yes, Mr. Shepherd told me, before I paid the Whittakers, that he had this quarter leased for five years and he stated that it was his. I let him run his cattle in there, and I watered at his mill. The first year he moved there I watered at his mill and we run our cattle all there together. * * *

"Yes, I knew Mr. Shepherd had a five year lease from the Whittakers in writing at the time I sent my first check to them. He told me he had a lease. He told me that just after he moved down there, and

that was long before 1941, probably in 1939. * * *

"Yes, the lease I got through Louis Whittaker was made long after Mr. Shepherd told me he had a five year lease on it."

The forfeiture clause in the Shepherd lease has been set out above and it clearly appears therefrom—and from the well recognized authorities interpreting such language—that no forfeiture of the Shepherd lease occurred. One such leading authority is Gray v. Vogelsang, Tex.Civ.App., 236 S.W.122, 126, where the legal effect of such a provision in a like lease is discussed in this language:

"It is a well-settled rule of the common law that a landlord could not forfeit the lease of his tenant for failure to comply with the provisions without first making demand upon the tenant for such performance. There is no statute in this state changing this rule of the common law, and it not being inconsistent with the Constitution or laws of this state, it is in force as a rule of decision in this jurisdiction. Article 5492, Revised Statutes [Vernon's Ann. Civ.St. art. 1] The common law rule is thus stated in Wood on Landlord and Tenant (2d Ed.) vol. 2, p. 1202:

" 'No ejectment can be maintained for nonpayment of rent unless there is some express condition or proviso in the lease or agreement giving the landlord a right to re-enter and determine the lease or tenancy for such nonpayment. The landlord must have a "right by law to re-enter for nonpayment thereof." Such condition or proviso may by express words dispense with the necessity of a formal demand of the rent; as where it says "although no formal demand shall have been made thereof," or to that effect.

" 'Unless there are express words in the lease or agreement dispensing with a formal demand of the rent, or the case falls within the above enactment, no entry or ejectment can be maintained for nonpayment of rent unless there has been a formal demand thereof made according to the strict rules of the common law. (1) The demand must be made by the landlord or by his agent duly authorized in that behalf. (2) It must be made on the very last day to save the forfeiture. Therefore, if the proviso for re-entry be on nonpayment of rent for thirty days after it becomes due, the demand must be made on the thirtieth

day after the rent became due (exclusive of the day on which it became due), and not on any other day before or afterwards. (3) It must be made a convenient time before and at sunset. It must be continued actively or constructively until sunset. (4) It must be made at the proper place. Therefore, if the lease or agreement specify the place at which the rent is to be paid, the demand must be made there and not elsewhere.'

"The reasoning of the common-law rule is predicated upon the theory that provisions for the termination and forfeiture of lease contracts and for re-entry are for the securing to the landlord of the payment of the rents specified and contracted to be paid, and that no forfeiture may be had and no lease contract terminated where the rents due are forthcoming upon due demand therefor. It is a salutary rule and inures to the benefit of all parties who seek to do equity in the premises.

"A similar statement of the rule is found in 16 Ruling Case Law, p. 1127, and in 24 Cyc. pp. 1355 and 1404. The following cases, among many others which might be cited, announce and apply the rule: Connor v. Bradley, 1 How. 211, 11 L.Ed. 105; Prout v. Roby, 15 Wall. 471, 21 L.Ed. [58], 59; Gage v. Bates, 40 Cal. 384; McCroskey v. Hamilton, 108 Ga. 640, 34 S.E. 111, 75 Am.St.Rep. 79; Faylor v. Brice, 7 Ind.App. 551, 34 N.E. 833; Moran v. Lavell, 32 R.I. 338, 79 A. 818, Ann.Cas.1912D, 1007; Chapman v. Harney, 100 Mass. 353; Blackman v. Welsh, 44 Mo. 41; Godwin v. Harris, 71 Neb. 59, 98 N.W. 439, 8 Ann.Cas. 579.

"It is only in cases in which the lease contract contains an express waiver of demand that the common-law rule can be disregarded. The contract of lease in the instant case contains no such waiver. The contract provides:

*   *   *   *   *   *   *

"There is no express waiver of demand in this provision. It only recognizes the right of the landlord to cancel the lease and re-enter the premises in event of default on the part of the lessee, and contains no stipulation that such cancellation and re-entry can be made without demand. The right of cancellation here recognized is the right to cancel in the manner provided by law, and the courts will not, in aid of a forfeiture, from the language here used imply a waiver of legal requirements."

Such is the nature of the instant case, as may be seen from the above forfeiture provision, which contains no words waiving rent demand as a prerequisite to cancellation and re-entry—that is, such expressions of waiver as ordinarily found in the words "without further notice or demand," or words to that effect. If the lessors desired to enforce the forfeiture, it was incumbent upon them to demand the rent at proper time and place, and, as stated, there is no evidence of such demand or any desire to work a forfeiture or cancellation in the manner provided by law.

The governing rule of law stated in the Gray case is likewise expressed in 27 T.J. p. 64, sec. 15. For other authorities, see Conn v. Southern Pine Lumber Co., Tex. Civ.App., 11 S.W.2d 199; 35 C.J. p. 1073, § 245, p. 1075, § 248; 36 C.J. p. 599, § 1758 (citing Henderson v. Beggs, Tex.Civ.App., 207 S.W. 565); 32 Am.Jur. p. 724, sec. 855, et seq.

Under the above authorities and the undisputed testimony, we conclude that the Shepherd lease was never forfeited, and that the lease attempted to be executed to Sorrells covering the same land was ineffective or inferior to the rights of Shepherd.

The above in effect disposes of this appeal, but we will notice another point. For a time Sorrells held a grass lease by the year on a quarter section of land adjoining the Whittaker quarter. No fence divided these two quarter sections and in this suit he makes the contention that Shepherd's cattle damaged him in that they went upon and grazed the grass in that quarter which he rented from its owner, by the name of Renecke. It was a kind of common pasture, and neither undertook to fence the other out. For a time Shepherd and Sorrells appeared to have pastured and watered stock together on these tracts, at least until Sorrells on or about the first of June, 1941, sold the balance of his year's lease on the Renecke quarter to a party by the name of Boyd. Concerning such joint use of the land, Shepherd testified he turned about twelve or fifteen head of stock onto the 320 acres, and that each quarter section was capable of sustaining about that many head. If he turned into the common pasture more than he was entitled, and there is no evidence that he did, the damages accruing for such excess pasturage was slight.

With reference to their arrangements for the joint use of the two quarter sections of land, Sorrells himself testified:

"Now in 1941 there was no water on this half-section of land, not any permanent water. The half-section had to be watered from Shepherd's windmill over on his land. We had been swapping grass land with Mr. Shepherd so that I could use his water. No, he didn't charge me for watering at his mill, we just used it jointly, a sort of friendly partnership."

As best it can be determined from the testimony, the above reflects the manner of use these parties made of the grass on the 320 acres and the reason for so doing. Therefore, it has been necessary to make a very careful examination of the testimony to ascertain what, if any, damages Sorrells may have suffered from any alleged unwarranted use of the grass on the Renecke quarter by Shepherd. After such consideration, we have concluded that there is neither a showing of any definite encroachment by Shepherd on Sorrells' grass, nor is there any showing whatever by legal and admissible testimony of the market value of such grass, if any taken.

■ Further, the appellant makes several points against the court's charge to the effect that certain issues were erroneous in presenting questions of law and not issues of fact. Some of these issues and the answers thereto are as follows:

"Issue No. 1: Did the plaintiff, F. O. Sorrells, have a valid and binding lease upon the Whittaker quarter section of land from April 1, 1940 to April 1, 1943? * * * Ans. Yes.

"If you have answered Issue No. 1 'Yes', then, only in that event, you will answer Issue No. 2.

"Issue No. 2: When the defendant, J. C. Shepherd, turned his cattle into the 1/2 section of land in question in February, 1941, was the lease of the plaintiff, F. O. Sorrells, superior to the lease asserted by the Defendant, J. C. Shepherd? Ans. Yes."

"Issue No. 4: Did J. C. Shepherd have a valid grass lease on the Whittaker quarter section on or about Jan. 29, 1938, with the owners of the land, the Whittakers? Ans. Yes.

"Issue No. 5: Was such grass lease in effect during the year 1941 and 1942 and 1943 as between J. C. Shepherd and the Whittakers? Ans. No."

These issues do erroneously present questions of law, but under the undisputed testimony and the Appellant's demand for an instructed verdict, such errors become harmless in view of the disposition we find it necessary to make of this appeal. At the conclusion of the trial the picture of the proceeding is very well presented by the Law of Special Issues (Speer, Sec. 37, p. 46) as follows:

"It may be a superfluity to add that no question of pure law should ever, in any event, be submitted to a jury for a finding of any character thereon. Whether the question be wholly one of law or one involving in part only, a question of law, for the court to submit such a matter may be reversible error. If the jury in such event should find upon the issue and decide it correctly, of course the judgment following could not be wrong and the error of submission would prove harmless. The court, where such an issue has been inadvertently submitted and found by the jury, undoubtedly would not be bound thereby because such an issue is one entirely beyond the power of the court to submit, and entirely beyond the power of the jury to find, and their attempted answer thereto would be immaterial as matter of law and constitute no obstacle to a correct judgment."

However, as noted above, the submission of said issue becomes immaterial, since the appellant was in any event entitled to an instructed verdict, which was refused him and to which ruling he excepted and correctly presents and insists on pertinent propositions in this court.

For the reasons assigned the judgment of the trial court is reversed and here rendered for the appellant.