A. B. PETICOLAS V. J. E. CARPENTER ET AL.

1. JURISDICTION.—One who had obtained judgment against a defendant before a justice of the peace, and procured the levy of execution on a stock of goods, intervened in a suit pending in the District Court, which was brought by another to subject the goods to the satisfaction of his mortgage. The intervenor pleaded fraud in the execution of the

mortgage, and asked an enforcement of his lien acquired by levy of execution. The plaintiff recovered judgment, under which the goods were sold and the proceeds paid to the plaintiff. Afterwards, on error prosecuted by intervenor, the judgment was reversed, and the intervenor, by amendment, asked a judgment against the plaintiff, who had appropriated the goods: *Held*—

1. That though intervenor's claim was for an amount less than $500, yet, since the jurisdiction of the District Court attached on the original intervention, it thereafter retained jurisdiction to finally dispose of the matters in litigation without reference to amount.

2. The controversy was as to the right to priority of payment out of the proceeds of the goods, and that question being decided in favor of intervenor, the court had authority to direct and enforce the final appropriation of the proceeds.

3. The amended plea of intervenor, asking a personal judgment against plaintiff, on account of proceeds of sale appropriated by him, was not the setting up of a new cause of action which would subject his claim to the bar of limitation, but set forth substantially the same cause of action.

4. Intervenor's rights were not lost by his laches in failing to appeal. The lien of intervenor's levy never having been vacated or waived, must be satisfied through the personal liability of the plaintiff, who had received the proceeds of sale.

5. Whatever relief a party is entitled to on reversal, may be granted in the same case without resorting to a new suit.

2. JUDGMENT—RESTITUTION.—A party obtaining through a judgment, before reversal, any advantage or benefit, must restore what he obtained to the other party after the reversal.

APPEAL from Victoria. Tried below before the Hon. H. Clay Pleasants.

The case is sufficiently stated in the opinion.

*A. B. Peticolas* and *Glass & Callender*, for appellant.

I. The court had no jurisdiction of the case between the plaintiff and intervenors, as made by the intervenors' amended pleading, nor to render personal judgment against him. (Const., art. 5, sec. 8.)

II. The amendment of the intervenors set up a new cause of action, which was barred by the statute of limitation of two years.

The cause of action against plaintiff accrued, if at all, February 3, 1877, when the proceeds of the goods were paid plaintiff by the sheriff. Amended pleas of intervenors were filed June 14, 1879. The suit, as originally made by the intervenors, was a suit to foreclose the lien of their executions against Carpenter.

An amendment setting up a new cause of action may be met by the plea of the statute of limitations. (Henderson v. Kissam, 8 Tex., 52; Williams v. Randon, 10 Tex., 74; The Governor v. Burnett, 27 Tex., 37; Wooldridge v. Hathaway, 45 Tex., 380.)

III. The lien of the intervenors' executions having been declared of no effect by the judgment of the District Court of November 20, 1876, and that judgment not having been suspended by the perfection of intervenors' appeal, and the goods having been sold under that judgment and the proceeds applied as therein ordered, the subsequent reversal of the cause by the Supreme Court, on January 21, 1879, did not revive the lien of the executions, nor vitiate and render null and void that which had been legally done prior to the reversal; nor did it have the effect to create a cause of action in favor of the intervenors against the plaintiff. Plaintiff's judgment against Carpenter was valid and entitled to satisfaction, and the order of sale was, in effect, an execution which could be, and was, satisfied out of goods of Carpenter's which were unincumbered and subject to levy. (Mosely v. Gainer, 10 Tex., 393; Castro v. Illies, 22 Tex., 479; Sherrod v. Davis, 17 Ala., 312; Estes v. Boothe, 20 Ark., 583; Camp v. Bancroft, 26 Ga., 393.)

Plaintiff is not primarily liable to pay the debt sued for by intervenors, due them by J. E. Carpenter.

The debt was primarily a debt due and owing by J. E. Carpenter to intervenors, for goods by him purchased of them after the plaintiff's debt was created and his mortgage recorded. The money realized from the sale of the goods was applied to the payment of a judgment against Carpenter, and the order of sale performed the duties of an ordinary execu-

tion. The record shows no privity of contract between plaintiff and intervenors, and no promise or agreement by plaintiff to pay their debt; nor does it show that Carpenter is insolvent. (Paschal's Dig., art. 3875.)

*Lackey & Stayton,* for appellees.

I. The court had jurisdiction of the cause in the first instance, and had full power to administer the property in its custody. (Const., art. 5, sec. 8.) It is but the ordinary distribution of a fund in possession of the court among creditors.

II. Peiser & Co. and Ralph Levy & Co. having caused their executions to be levied upon the property in the hands of the sheriff while he held the same under the levy made by him of the writ of sequestration sued out by the appellant, had an interest in the property which authorized them to intervene. (Eccles *v.* Hill, 13 Tex., 67.)

III. The amendments filed by the intervenors, A. Peiser & Co. and Ralph Levy & Co., did not set up a new cause of action, and the statute of limitation did not run against the claim of the intervenors.

IV. The intervenors did not acquire their lien by the judgment of the District Court, but by the levy of their executions; and the failure to give a supersedeas bond did not affect their lien. The reversal of the case by this court fully establishes that their liens fully attached, and that they were entitled to enough of the proceeds of sale to satisfy their judgment.

V. The executions of the intervenors being levied and still in the hands of the sheriff, and not returnable, at the time the appellant caused the sequestered property to be sold under his execution, which issued upon an erroneous judgment, the proceeds of sale, so far as necessary to pay the judgments of the intervenors, should have been paid to them. The appellant received the same in his own wrong.

VI. While the title to the sequestered property sold under appellant's execution passed to the purchaser notwithstanding the judgment under which his execution issued was afterwards

reversed by this court, yet the proceeds of such sale are as completely under the control and direction of the court as was the property before the sale thereof, and especially so when the proceeds went into the hands of the person in whose favor the erroneous judgment was reversed.

· GOULD, ASSOCIATE JUSTICE.—In 1876 Peticolas sued Carpenter on a promissory note, and sequestered a stock of goods on which he held a chattel mortgage to secure his note. Subsequently, A. Peiser & Co. and Ralph Levy, having each obtained judgments in a Justice's Court against Carpenter, caused their executions to be levied on the same goods, and intervened in the suit of Peticolas *v.* Carpenter, denying the validity of the mortgage and asking the satisfaction of their judgments by the enforcement of the lien arising from the levy of their executions. The District Court, however, by judgment rendered November 20, 1876, upheld the mortgage, directing the proceeds of the sequestered goods to be applied first to the satisfaction thereof, any surplus remaining thereafter to be applied to the demands of intervenors.

Whilst that judgment was in force, not superseded or appealed from, the goods sequestered were sold under an order of sale regularly issued in the case of Peticolas *v.* Carpenter, and the proceeds were paid over to Peticolas, no surplus remaining for intervenors. November 4, 1878, intervenors prosecuted a writ of error to this court, which resulted in a reversal of the judgment, the mortgage being held, as to them, invalid. (50 Tex., 638.) In June, 1879, intervenors filed amended pleas of intervention, setting up these facts, and seeking to recover of Peticolas the amounts of their respective judgments and costs. The facts were agreed on and the case submitted to the court, which gave judgment that Peticolas, within ten days after the rising of the court, pay to the sheriff, for the intervenors, out of the proceeds of the sale received by him, the amounts of their respective judgments and costs, and on his failure to do so ordered that execution issue against him,

in favor of intervenors, for said amounts. Peticolas brings the case here by appeal, presenting the following questions, which were all duly raised in the court below:

1st. The jurisdiction of the District Court over the case stated in the amended pleas of intervention, and its power to render a personal judgment against Peticolas, is denied, the amount in controversy being less than $500.

In our opinion, the jurisdiction of the court attached on the original intervention of appellees, and the court thereafter retained jurisdiction to finally dispose of the matters in litigation, without regard to amounts.

The controversy was as to their respective rights to priority of payment out of the proceeds of the goods, and that question being finally determined in favor of intervenors, the court had authority to direct and enforce the final appropriation of these proceeds, as was done.

2d. It is claimed that the amended pleas of intervention set up a new cause of action, which was barred by the statute of limitation of two years.

Our opinion is, that the cause of action was substantially the same throughout. The relief sought throughout was that the proceeds of the sequestered goods be primarily applied to the payment of the executions of intervenors, that right growing out of the alleged priority of their lien to an invalid mortgage and sequestration. That application of the proceeds was enforced by a personal judgment, authorized and rendered necessary by the fact that the proceeds have passed into the hands of appellant under an order of the court erroneously made.

3d. It is asserted that the lien of intervenors was lost by laches; that, by not prosecuting an appeal, they allowed the proceeds to pass regularly into the hands of Peticolas, and thereby lost their lien, and that the reversal of the judgment did not revive it or create a cause of action in their favor. It has been seen, in the statement of the judgment, that it did not vacate the execution lien of intervenors, but merely denied them priority over the mortgage. By appealing promptly they

might have prevented the proceeds from passing into appellant's hands, and, not having done so, they permitted the personal liability of appellant to be substituted for the proceeds. To that extent, their actual lien on the proceeds was lost. But the lien itself had never been vacated or waived, and still attached to the substitute or representative of the proceeds—the personal liability of Peticolas.

The right of intervenors to a writ of error was statutory and legal. Having procured a reversal of the judgment and an adjudication of the question of priority in their favor, they were still entitled to have that priority enforced, as it should have been on the first trial, in so far as the court still had power to do so.

In Reynolds *v.* Harris, 14 Cal., 680, the court say: "The current of authority, broken by only a case or two, goes directly to the point that a party obtaining through a judgment, before reversal, any advantage or benefit, must return what he got to the other party after the reversal." (See also Woodcock *v.* Bennet, 1 Cowen, 737; Maghee *v.* Kellogg, 24 Wend., 32; Field *v.* Maghee, 5 Paige, 539; Jones *v.* Hacker, 5 Mass., 264; Cummings *v.* Noyes, 10 Mass., 433; Pittsfield *v.* Barnstead, 38 N. H., 115; Bank of U. S. *v.* Bank of Washington, 6 Pet., 19.)

It has been held by this court, that although a stranger, purchasing *bona fide* at an execution sale, takes a title unaffected by the subsequent reversal of the judgment, "if the plaintiff in execution, or his attorney, is the purchaser, it puts an end to his title." (Stroud *v.* Casey, 25 Tex., 754.)

Where a judgment for debt is reversed after it has been enforced by execution, and the case is finally decided in favor of defendant, he is certainly entitled to restitution, and in our courts it can hardly be questioned, that whatever relief a party becomes entitled to on reversal may be granted in the same case without resorting to a new suit.

The case of Caperton *v.* M'Corkle, 5 Grat., 177, is more analogous to the present, as to the liability of Peticolas, than

any other we have found. The parties to that suit had each sued out attachments against the effects of one Coalter, the attachment of McCorkle & Adams being first levied. On motion, the attachment of McCorkle & Adams was quashed, they prosecuting an appeal. Carpenter, in the meantime, obtained judgment, enforced his attachment, and received the proceeds. When the case of McCorkle *v.* Coalter came back with their attachment reinstated, the officer made return of the sale and appropriation of the proceeds. They thereupon brought suit against Carpenter for money had and received, and their recovery was affirmed. The principal difference here is, that the court had all the parties before it, litigating their rights in one case, and hence it did not become necessary for intervenors to resort to a separate suit.

The judgment is affirmed.

AFFIRMED.

[Opinion delivered March 5, 1880.]