## CONN et al. v. SOUTHERN PINE LUMBER CO. et al. (No. 1697.)

Court of Civil Appeals of Texas. Beaumont.
Nov. 1, 1928.

Mantooth & Denman, of Lufkin, for plaintiffs in error.

R. E. Minton, of Lufkin, for defendants in error.

WALKER, J. This is an appeal by writ of error, but the parties will be referred to as appellants and appellees.

On the 5th day of March, 1920, D. C. Kenley and Houston Motor Car Company entered into the following contract:

"The State of Texas, County of Angelina.

"Know all men by these presents: That Houston Motor Car Company, a corporation existing under the laws of the State of Texas, with E. T. Barden as its president and its principal place of business at Houston, Texas, for and in consideration of $5,000.00 paid and promised to be paid by D. C. Kenley of Angelina County, Texas, as follows: $2,500.00 cash, the receipt of which is hereby acknowledged, and the. further payment of $250.00 to be paid on the first day of October of each and every year for a period of ten years hereafter; the first payment to be made October first, 1920, and the last payment to be made October first, 1929; the said Houston Motor Car Company does hereby lease, demise, and rent unto the said D. C. Kenley for a period of ten years beginning October first, 1920, and extending to September 30th, 1930, the following described land situated in Angelina County, Texas, about twelve miles South of Lufkin, to wit:

"Comprising 2200 acres of land, more or less, according to the maps and plats recorded in the deed records of Angelina County, Texas, and being the same land deeded said Houston Motor Car Company by T. W. Largent, which deed is of record in Angelina County, Texas,

"The said D. C. Kenley shall use the above described land in any way he shall see fit for pasture purposes with the privilege of putting as much as fifty acres of the above land in cultivation, but all necessary improvements on the land, clearing, fencing, houses, etc., shall be made at the expense of the said D. C. Kenley and at the expiration of this contract become the property of the said Houston Motor Car Company.

"The said D. C. Kenley shall have the privilege of destroying, selling or using in any way he should desire any and all of the timber on the above described land during the period of this contract.

"It is understood and agreed by all parties concerned that this lease contract is not to interfere in any way with the said Houston Motor Car Company or their assigns prospecting for oil or any other mineral on the above described land during the life of this lease.

"It is also understood and agreed that the said D. C. Kenley shall have the privilege of transferring or assigning this contract or any part of it to any one that he should desire without the consent of the Houston Motor Car Company, subject to all the provisions thereof.

"The refusal or failure on the part of the said D. C. Kenley or his assigns to pay any one of the ten installments when it is due of $250.00 mentioned above, shall at once cancel this contract and the said D. C. Kenley shall forfeit all payments previously made.

"This contract is executed in duplicate, D. C. Kenley for himself and E. T. Barden, authorized agent and president of the Houston Motor Car Company.

"Interlineations made before execution.

"This the 5th day of March, A. D. 1920. Witness our hands this the 5th day of March, A. D. 1920.     D. C. Kenley, ·

"$5 Internal Revenue cancelled.
                    "Houston Motor Car Company.
                       "By E. T. Barden, Pres."

The interest of Kenley in this contract was afterwards vested in appellee Southern Pine Lumber Company. On the 31st day of December, 1924, E. J. Conn purchased the land described in the foregoing contract from those holding under Houston Motor Car Company, with actual knowledge of the foregoing contract and of its contents. After making his purchase, Conn sold the timber to Boynton Lumber Company and ousted Southern Pine Lumber Company from the possession it had held continuously through a tenant from the date of its contract with Houston Motor Car Company.

This suit was instituted on August 27, 1927, by appellees against appellants, E. J. Conn and Boynton Lumber Company, praying that—

"Defendants be restrained from interfering with plaintiff in removing and using said timber and be required to permit it to enter upon said premises for said purpose, and that the plaintiff be granted such additional time as it may then have lost, by reason of the defendants having denied to it, on July 12, 1927, and ever since, the right of entry for said purpose."

Appellants answered by general demurrers, general denial, and special pleas, as follows:

(1) Plaintiff did not keep or perform the covenants of the contract.

(2) Defendants denied that the contract was a lease, but pleaded that it was a sale of the merchantable timber for the consideration of $5,000, $2,500 of which was paid in cash and the balance to be paid in the deferred payments recited in the contract.

(3) They denied that Kenley made the contract for himself, but pleaded that it was made by him for the interest of appellee for the sole purpose of acquiring the timber, and expressly denied that either Kenley or appellee accepted the contract as a lease, or that they intended at the time of the execution of the contract to use the land as a pasture. They denied that either Kenley or appellee had been in possession of the land.

(4) They further alleged that the contract was fraudulently made on the part of Kenley "with the intent to avoid the payment of the state, county and free school tax that the law charges against the value of the timber." They denied that either Kenley or appellee had ever paid any taxes on the timber.

(5) They specially pleaded their title under the Houston Motor Car Company, alleging that they were the owner of the legal and equitable title to the land and timber and all the equities under the contract, with the right to declare a forfeiture for failure to pay the annual installment of $250. In this connection they specially pleaded the forfeiture clause of the contract.

(6) They pleaded that appellee knew of the purchase by Conn of the land, and he was due the annual installment with the right to declare a forfeiture, and knowing these facts appellee failed to make the payment due October 1, 1925, and because of such default

Conn forfeited the contract as of date October 30, 1925, and on that date notified appellee of the forfeiture; that appellee never paid nor offered to pay the installments due subsequent to the purchase by Conn.

(7) They admitted fencing the land and ousting appellee from possession and denying it the right of entry and right of possession and the right to cut and remove the timber, and defended their acts in this respect by the alleged forfeiture.

(8) They specially denied that they knew, or had reasons to believe, that appellee or Kenley entered into the contract as a lease, but insisted that they entered into the contract solely as a timber purchase contract.

(9) That if the contract was not by its express terms a sale of the timber, then it was ambiguous, which ambiguity they pleaded, and that it was the intent of the parties at the time of its execution that the contract should be a contract for the sale of timber and not for the lease of the land.

(10) In the alternative, Conn pleaded that he was the owner of the annual payments, and if not entitled to the right of rescission that he was entitled to judgment for the annual payments, for which he prayed.

The Boynton Lumber Company denied that it fenced the land or participated in the exclusion of appellee from possession, but specially pleaded its title to the timber under its purchase from Conn.

Appellee, by supplemental petition, denied the allegations of appellants' answer, pleaded a tender of and willingness to pay the annual payments subsequent to the purchase by Conn, and that appellant Conn and his predecessors in title, by their course of conduct with appellee, had led it to believe that the forfeiture would not be insisted upon.

Upon trial to the court without a jury, judgment was in favor of appellee for the relief prayed for. In support of its judgment, the following conclusions of law and fact were filed:

"Findings of Fact.

"1. That the Houston Motor Car Company is the common source of title.

"2. That Houston Motor Car Company and D. C. Kenley made and entered into the following contract on the date thereof, and that each party thereto understood its terms as they are written, and that there was no fraud in the execution thereof: (Here follows the contract set out above.)

"3. That thereafter the plaintiff acquired all the rights of D. C. Kenley under the contract, and the defendants acquired all the rights remaining in the Houston Motor Car Company.

"4. That by a course of mutual conduct the Houston Motor Car Company and its vendees, other than defendants herein, before each annual rental payment was due under the terms of the said contract, gave D. C. Kenley and the plaintiff, notice at Diboll, in Angelina County, Texas, that such rentals would be due, and accepted payment thereof sometimes after the 1st day of October, the date when they were due.

"5. That after the defendant, E. J. Conn, had acquired the interest remaining in Houston Motor Car Company and its vendee, Mrs. E. T. Barden, he, by his course of conduct, led the plaintiff to believe, and it did believe, that he would use the lands in controversy as a pasture in lieu of the payments thereafter of the $250.00 stipulated in said contract as annual rentals due on October 1st of each year.

"6. That neither of the defendants ever gave plaintiff, nor D. C. Kenley notice that the rentals would be due on October 1st, 1925, 1926, or 1927, respectively.

"7. That the same day plaintiff received notice from the defendant, E. J. Conn, that he had called the forfeit, it made inquiry of him if he would accept payment of the sum he claimed to be past due and he said that he would not, and defendants refused on the trial of this cause to accept any sum in payment of any of the rentals claimed by them to be past due.

"8. That the defendants, on July 12th, 1927, and ever since had the premises fenced and the gates thereto locked and then and ever since, have refused to permit plaintiff to enter upon said lands for the purpose of removing any of the timber situated thereon.

"I conclude as matter of law:

"1. That the plaintiff has not forfeited its rights under the aforesaid contract, and is entitled to enforce it according to its terms and provisions, and is not therefore, entitled to its damages prayed for in the alternative.

"2. That plaintiff is entitled to an injunction restraining the defendants from interfering with it in destroying, selling, or using the timber described in the aforesaid contract.

"3. That the plaintiff should have such time after September 30, 1927, within which to destroy, sell, or use said timber as it may have lost by reason of defendants' refusal on July 12th, 1927, to permit it to enter said premises to cut and remove said timber and the pendency of this suit.

"4. That the defendants recover of D. C. Kenley the sum of Seven hundred fifty dollars as rentals due on October 1st, 1925, 1926 and 1927."

Appellant thus states the contentions of the parties:

"The contention of appellee is that the instrument sued on is a lease of the land with a period of ten years in which to cut and remove the timber. * * * Appellee contends that since the said contract is a lease of the land and not a sale of the timber, the forfeiture clause cannot be effective until after a demand has been made for the payment of the amount due. Appellant contends that the contract is a sale of the timber with the privilege of cutting and removing the same within the period of ten years, as prescribed by the contract; that the only consideration for the $5,000 is the value of the timber."

As propositions under these contentions, appellants contend:

(1) That a proper construction of the language of the contract makes it a sale of the timber and not a lease.

(2) That if in error in that construction,

the contract was ambiguous, and under the undisputed evidence, or at least by the great weight of the evidence, the intent of the parties made the contract a sale of the timber and not a lease.

(3) That the court in making its conclusions of law and fact discarded all extraneous evidence and decided the issue wholly upon the language of the contract.

(4) If the court considered the evidence, the judgment was without support.

(5) That the contract was "a sale of the timber with ten years in which to cut and remove the timber, and that said contract was subject to forfeiture for failure to pay any one or more of the annual installments, as therein provided, and that a failure so to pay any one or more of said installments, as therein provided, authorized the holder of such indebtedness to exercise his right of forfeiture without judicial ascertainment," and, having exercised that right, the judgment should have been for appellant.

(6) That the court erred in granting appellee an extension in which to cut and remove the timber.

## Opinion.

The judgment of the trial court should be sustained upon the following grounds:

■ 1. The contract by its express terms purports to be a lease with the right to cut and remove the timber and not a sale of the timber. The language of the contract is that of a lease and not a sale. The terms of payment evidence a lease of the land and not a sale of the timber. As we construe the contract, it was not ambiguous, but its terms are clear and explicit, and the language used was appropriate to express a lease. Being a lease of the land and not a sale exclusively of the timber, the contract was not subject to forfeiture until after demand had been made for payment of the yearly rentals as they became due. This rule was thus established by the Galveston court in Gray v. Vogelsang (Tex. Civ. App.) 236 S. W. 122:

"It is a well-settled rule of the common law that a landlord could not forfeit the lease of his tenant for failure to comply with the provisions without first making demand upon the tenant for such performance. There is no statute in this state changing this rule of the common law, and it not being inconsistent with the Constitution or laws of this state, it is in force as a rule of decision in this jurisdiction."

It is here admitted that Conn nor any one in privity with him demanded payment of the rental on the 1st of October, 1925, but on the 30th of that month undertook to declare a forfeiture by written notice to appellee, and afterwards refused to accept the rent. If we have correctly construed the contract as a lease, appellants concede that the judgment should be affirmed. In their brief they say:

"If this court believes from this record that the real consideration in said contract was a lease of the land with the right to cut and remove the timber, then we ask the court to affirm the judgment."

■ 2. But if by its express terms the contract was not a lease, but ambiguous in its meaning, and if because of that ambiguity the court was authorized to hear extraneous testimony as to the intent of the parties, which he did, then his conclusions of fact have full support in the evidence. On the issue of intent, Kenley testified:

"I made the contract that has been introduced in evidence with the Houston Motor Car Company through E. T. and E. B. Barden. I discussed with them the question of this being cane pasture and I wanted possession of it; I discussed that the cane would be pasture and that I would use it for pasture purposes, with Mr. Barden; at that time Mr. Powell and I owned a few cattle together, and I figured he would use the pasture possibly for our own use, and Mr. Powell had been using it, and it was agreeable with Mr. Powell to trade for this. Mr. Powell knew that he would get the same use of it, and I discussed it at length with the men—there with Mr. Barden, and in fact I—as I recollect, I had a letter that went through Mr. Powell in which he agreed that any trade that he made was agreeable with him—any trade made with me. I wanted this place during the contract just as I made the trade. And I went to his place and drew the contract just as I made the trade and went in and penciled the contract and went back to Mr. Barden's office for a stenographer and this was Mr. E. T. Barden, as I recollect the President of the Company, and he told me to go around where his brother was, and I went around there and got it drawn, and then his brother called this second brother—called the president of the Company to come over to sign it, and we stepped across the street to a notary public and executed the contract and put it in a letter with my check and went up to a mail box and mailed it. I never had any such purpose in view as to defraud the State of Texas of any taxes by the form of the lease drawn. I did that contemplating using it as a pasture and putting cattle on the branch and clearing forty or fifty acres with possibly a field house there for a man to run the pasture, and wanted something for some farmer to look after the pasture for us. That was in 1920, and as to what use was made of it up until Mr. Conn took possession, I will state that I sold out the cattle that I had to Mr. Powell, and in selling them I turned him over the use of the pasture for that year; I sold out my interest in the cattle to Mr. Powell. That pasture was worth $250.00 a year; that is what I expected it to be; and Mr. Powell said he would pay that and he in some way paid us in working for us. He performed services for us and he expected to pay for the lease $250.00 a year."

Taylor Powell testified that he was in possession of this land as a tenant under appellee from the date of the contract until 1924, when he sold his cattle to appellant Conn. He said, speaking of the land in controversy:

"I was in possession of that pasture as a tenant. I leased that pasture the first time from the Houston Motor Car Company. * * * I was in possession of it in 1920 under that lease. * * * I had the land leased in 1920; I leased it for five years, payable each year, and when I sold the land to Mr. Conn he wanted the pasture. * * * That was about the last of December that I sold the cattle, and after that it belonged to the Southern Pine Lumber Company—the pasture—and so I couldn't—he would have to see them; my lease was out. * * * A switch cane pasture is worth here about fifty cents per acre. * * * I agreed to give the Southern Pine Lumber Company $250.00 per year in money or work; I worked for them a whole lot. * * * As to whether I paid them every year, $250.00 for the pasture, I will state that I did not keep it every year; I did not lease it only after they bought it."

The extraneous evidence offered by appellants on the issue of intent contradicted appellee's testimony but did nothing more than make an issue for the court to decide. The evidence fully sustains the court's conclusion "that each party thereto (referring to the contract) understood its terms as they are written."

 3. The evidence fully sustains the court's conclusion that—

Appellant E. J. Conn "led the plaintiff to believe, and it did believe, that he would use the lands in controversy as a pasture in lieu of the payments thereafter of the $250 00 stipulated in said contract as annual rentals due on October 1st, of each year."

On that issue Mr. Kenley testified that he had a conversation with Mr Conn after Conn purchased the land in which Conn wanted to rent the land or lease the land for pasture purposes; that he made Conn an offer of $250 a year, which Conn neither accepted nor rejected; that afterwards Conn took possession of the land and used it as a pasture continuously from the 1st of January, 1925, down to the date that Conn notified him of the attempted forfeiture; that during that time he thought that Conn was using the land as a pasture, expecting to pay him $250 a year for its use. On this conclusion of fact, a forfeiture by Conn would be inequitable.

4. The evidence also sustains the court's conclusion that—

"By a course of mutual conduct the Houston Motor Car Company and its vendees, other than defendants herein, before each annual rental payment was due under the terms of the contract, gave D. C. Kenley and the plaintiff notice at Diboll, in Angelina County, Texas, that such rentals would be due, and accepted payment thereof sometimes after the 1st day of October, the date when they were due."

The evidence on this issue was without controversy and fully sustained the court's conclusion.

5. Since appellants wrongfully denied appellee entry upon the land for the purpose of cutting the timber, the trial court, in the exercise of its equitable jurisdiction, was authorized to extend the contract so that appellee might suffer no injury by reason of appellant's wrongful conduct.

Appellee asserts that the trial court's conclusions of fact and law were not properly filed, and therefore should not be considered. We do not determine the merits of this proposition, since appellants' propositions present the same issues, with or without these conclusions, and would therefore have to be considered.

It follows that the judgment of the trial court must be, and the same is hereby in all things, affirmed.