11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                          Order

 

Outdoor Systems, Inc.

Appellant

Vs.                   No.  11-01-00052-CV B 
Appeal from Dallas County

BBE, L.L.C. a/k/a BBE/Arromid, L.L.C.

Appellee

 

The
motions for rehearing filed by Outdoor Systems, Inc. and BBE, L.L.C. a/k/a
BBE/Arromid, L.L.C. are denied.  Our
former opinion and judgment dated November 14, 2002, are withdrawn, and our
opinion and judgment dated March 20, 2003, are substituted therefor.  

 

AUSTIN
McCLOUD

SENIOR
JUSTICE

 

March 20, 2003

Panel consists of: Arnot, C.J., and

McCall, J., and McCloud, S.J.








                                                             11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

Outdoor Systems, Inc.

Appellant

Vs.                   No.
11-01-00052-CV B Appeal from Dallas County

BBE, L.L.C. a/k/a
BBE/Arromid, L.L.C.

Appellee

 

The
controlling issue in this case is whether the landlord=s written notice of default because of
nonpayment of rent was legally sufficient to permit forfeiture of two billboard
ground leases.  We hold that the notice
was insufficient, as a matter of law, because the notice was not specific; the
notice was excessive, imprecise, and unreasonable; and the notice required the
tenant to perform, in order to cure the default, certain acts not required in
the leases.

The trial
court, in a nonjury trial, found that the tenant, Outdoor Systems, Inc.
(Outdoor Systems), breached the leases and awarded the landlord, BBE, L.L.C.
a/k/a BBE/Arromid, L.L.C. (BBE), damages of $80,034.71, title to the two
billboards located on the land, and attorney=s fees.  We reverse and render
in part; modify in part; and, as modified, affirm in part.

The
significant economic issue between the parties is who owns the two billboards
located in Dallas.  If the forfeiture
was effective, the billboards are owned by the landlord, BBE.  If the forfeiture was ineffective, the
billboards are owned by the tenant, Outdoor Systems, who has the right under
the leases to come upon the land and remove the billboards.  In 1998, the city of Dallas enacted a
moratorium prohibiting the construction of new billboards within the city
limits.  The effect of that moratorium
significantly increased the value of the two billboards.  The trial court found that the value of the
billboards as constructed on the land is substantial and that the value of the
billboards removed from the land is minimal.








The two
leases were dated July 20, 1987, and each provided for a primary term of 10
years.  After the expiration of the
10-year term, each lease was automatically renewed for 1-year terms unless
terminated in writing by either party 60 days prior to the anniversary date of
the respective lease.  The anniversary
date for each lease was September 1.

In
February of 1997, Outdoor Systems acquired the leasehold interest in two tracts
of land which contained a billboard on each tract.  At that time, the land was owned by Sun NLF Limited
Partnership.  BBE purchased the land
from Sun on or about June 29, 1999.  On
or about June 28, 1999, Sun sent a letter to its tenant, Outdoor Systems,
advising Outdoor Systems that it was selling the land to BBE and that future
rent payments should be sent to BBE. 
Before receiving the letter, Outdoor Systems had mailed the July rent to
Sun.

On July 2,
1999, BBE sent a letter (first default notice) to Outdoor Systems stating that
future rent payments under the two leases should be mailed to BBE.  Upon receipt of the July 2 letter, Tanya
Lillie, an employee of Outdoor Systems, contacted Donald L. Woodsmall, BBE=s manager, and told Woodsmall that the July
rent had been sent to Sun.  Because Sun
had returned the July rent payment to Outdoor Systems and because Outdoor
Systems only cut rent checks once a month, Lillie asked Woodsmall if Outdoor
Systems could reissue the July payment when the rent check for August was sent
out.  Woodsmall told Lillie that he
would get back to her regarding her proposal. 
Woodsmall did not get back in touch with Lillie.

On July
16, 1999, BBE sent a second letter (second default notice) to Outdoor
Systems.  This letter stated that
Outdoor Systems had miscalculated the amount of rent owed under the leases and
demanded that Outdoor Systems perform other acts within ten days or the leases
would be in default and BBE would look Ato all of our remedies both at law and under the Leases.@  The
July rent, as calculated by Outdoor Systems, was tendered with the August
payment.[1]  BBE rejected both the July and August
payments.

Each lease
contained the following provisions:

4.  Rentals.

 

(c) It shall be deemed a
default by Lessee under the terms of this Agreement if Lessee fails to make any
payment to Lessor pursuant to the terms of this Agreement and such failure
continues for a period of ten (10) days following receipt by Lessee of written
notice from Lessor specifying such default.

 

5.  Termination.

 

(a) Lessor may terminate
this Agreement at any time following the nonpayment by Lessee of any amounts
due to Lessor hereunder, and the failure to pay such amounts within the
applicable cure period set forth in Paragraph 4 above.

 

(c) Upon termination of
this Agreement by Lessee or Lessor, for any reason other than default by
Lessee, Lessee shall have the right for a period of sixty (60) days
following the date of such termination to remove the Board and any other
associated facilities which had previously been installed by Lessee in
connection with the operation of the Board. 
Lessor shall cooperate with Lessee in order to accomplish such
removal.  In the event of default by
Lessee Board shall become sole property of Lessor and Lessee has no further
recourse or claim to the board or against Lessor.  (Emphasis added)

 

The July 2, 1999, letter from Donald
Woodsmall to Outdoor Systems provides in part:

 

You recently received a letter from STERLING
PACIFIC MANAGEMENT SERVICES, INC., the Asset Manager for Sun NLF Limited
Partnership, notifying you that they have sold the Property to BBE, l.l.c., and
that the July 1, 1999 payments under the Leases should be paid to BBE.  Please note that the payments should be made
payable and sent to:

 

                                                          BBE,
l.l.c.

                                                    P.O.
Box 690348

                                              San
Antonio, Texas 78269

                                      (301)
6957505 FAX (301) 6957510

 

We have not yet received the July 1, 1999
payments.  (Emphasis added)

 

The July 16, 1999, letter from Donald
Woodsmall provides in part:

 

Dear Ms. Lillie:

 








In reviewing the payments made under the
Leases in the last year, it is apparent that Outdoor Systems has been
miscalculating how the payments are to work. 
The payments are not to fluctuate on a monthly basis, but a new minimum
is to be set each year based on 25% of the previous year=s gross billings.  Outdoor Systems method miscalculates the Lease payments owing and
results in an understatement of the true payments.  The arrearages for the last ten months alone equal
$878.50.  The amount of the arrearages
prior to the last ten months is unknown to us as we do not have the information
needed to calculate those payments. 
Inasmuch as BBE, l.l.c. has succeeded to all of the rights, title and
interest of the previous Property owner in and to the Leases, these arrearages
under the Leases belong to BBE.  I would
appreciate receiving within ten days from the date hereof both the $878.50
relating to the last ten months and the total arrearages from the inception of
the Leases up to the last ten months; failing which, Outdoor Systems will be in
default under the Leases and we will look to all of our remedies both at law
and under the Leases.

 

We would also ask that you forward to us your
advertising contracts from the inception of the Leases to the present so that
we may audit and calculate the percentage payments that are owed throughout the
term of the Leases.  We are preserving all of our rights with
regard to the previous underpayments of rent until such audit has been
performed.  (Emphasis added)

 

Under the leases, in order for there to be a Adefault@ for nonpayment of rent, BBE was required to give Outdoor Systems
written notice Aspecifying such default.@

Forfeiture is a harsh and punitive remedy, and it is not favored in law
or equity.  41 TEX. JUR. 3D Forfeitures
and Penalties ' 5
(1998).  Some of the appropriate rules
regarding forfeiture pursuant to a contract are discussed in 41 TEX. JUR. 3D Forfeitures
and Penalties ' 6
(1998):

Forfeiture
under a contract will not be declared unless the language of the contract can
be construed in no other way.  A
forfeiture will be avoided when another reasonable reading of the contract
exists.

 

The
right to a forfeiture may be found only in language that is plain, clear, and
unequivocal.  Thus, when forfeitures are
intended to take place upon the happening of certain events, cause of
forfeiture is to be plainly and clearly stated, and the time definitely fixed.  Where grounds for a forfeiture are specified
in a contract, a forfeiture cannot be had on other grounds.

 

The court in Wendlandt v. Sommers Drug Stores Company, 551 S.W.2d 488
(Tex.Civ.App. - Austin 1977, no writ), discussed the general rules regarding
notice:








Notice of default in payment of rent must
convey a message that the notifier is initiating steps necessary to finally
assert his legal rights that if default is not cured, he may take final action
as provided in the contract.  In this
respect see: Moore v. Richfield Oil Corp., 233 Or. 39, 377 P.2d 32 (1962);
Hocker v. Heins, 231 N.Y.S.2d 481 (Sup.Ct. of Suffolk County, N.Y.1962)....The
cases in this State hold that a landlord cannot forfeit the lease of his tenant
for failure to comply with the provisions without first making demand upon the
tenant for performance.  Gray v.
Vogelsang, 236 S.W. 122 (Tex.Civ.App.1921, no writ); Shepherd v. Sorrells, 182
S.W.2d 1009 (Tex.Civ.App.1944, no writ); Conn v. Southern Pine Lumber Co., 11
S.W.2d 199 (Tex.Civ.App.1928, no writ).

 

See
41 TEX. JUR. 3d Forfeitures and Penalties ' 16 (1998).

Regarding the sufficiency of a demand, it is stated in 51C C.J.S. Landlord
& Tenant '
114(2)(b) (1968):

Where forfeiture of a
lease is dependent on the making of a demand for performance, the demand must
be a proper, specific, and reasonable one.

 

The
demand for rent must not be excessive. 
It is stated in 49 AM. JUR. 2d Landlord and Tenant ' 303 (1995):

As a general rule, the
demand for rent, for the nonpayment of which the lessor may declare the lease
forfeited, must be for the precise amount of rent due, and if an excessive
amount is demanded the demand will be ineffectual. 

 

The notice by BBE of default and the demand upon Outdoor Systems to pay
the rent pursuant to the leases was necessary in order to provide Outdoor
Systems an opportunity to cure the default prior to the harsh consequences of
forfeiture.  Cf. Ogden v. Gibraltar
Savings Association, 640 S.W.2d 232, 234 (Tex.1982).

The July 2 letter made no demand. 
It was merely a reminder that the July rent had not been paid.  The July 16 letter demanded too much.  The demand was not specific but was
excessive, unreasonable, imprecise, and required Outdoor Systems to perform
acts not required by the leases.








The July
16 letter demanded that Outdoor Systems, within 10 days, pay to BBE an
unspecified amount based upon Atotal arrearages from the inception of the Leases.@  The
leases were signed by the original tenant and landlord in 1987.  Lillie, an employee of Outdoor Systems,
testified that she was responsible for calculating and paying the rent on the
billboards.  Lillie testified that,
assuming there was an arrearage owed on the two leases, neither she nor anyone
else at Outdoor Systems had the information or ability to calculate, within the
10-day period, any arrearage that might have been owed back to 1987.  The trial court, in its findings of fact,
found that Outdoor Systems ignored the July 16 demand from BBE and that Outdoor
Systems made no effort to calculate or pay any rental arrearages.  We look at the notice of default that was
sent to Outdoor Systems by BBE to determine if the notice was sufficient.  The response of Outdoor Systems does not
determine the legal sufficiency of the notice. 
The demand letter purported to address both of the leases; however, it
failed to segregate the amount demanded to cure the alleged default under each
agreement.  Furthermore, BBE demanded
that Outdoor Systems provide advertising contracts from the inception of the
leases so that BBE could audit and calculate the percentage payments that were
owed throughout the term of the leases.

Outdoor
Systems was not personally liable for any unpaid rent prior to the time it
became the tenant under the leases in February 1997.  See Regency Advantage Limited Partnership v. Bingo Idea-Watauga,
Inc., 936 S.W.2d 275 (Tex.1996); 49 AM. JUR. 2d Landlord and Tenant ' 1145 (1995).  There is no requirement or obligation in the leases on the part
of the tenant to provide the landlord with advertising contracts relating to
the billboards.  A landlord cannot base
a forfeiture on the breach of an obligation that does not exist in the
lease.  See Deauville Corporation v.
Garden Suburbs Golf and Country Club, 164 F.2d 430 (5th Cir. 1947), cert.
den=d, 333 U.S. 881 (1948).

Both
parties discuss Rohrt v. Kelley Manufacturing Company, 349 S.W.2d 95
(Tex.1961).  The issues involved in this
appeal were not discussed in Rohrt. 
There, the court observed that the effect of the default notice was not Adisputed.@

Neither
the July 2 letter nor the July 16 letter was a sufficient notice of
default.  On August 11, 1999, BBE sent a
ANotice of Termination@ to Outdoor Systems purporting to terminate
both leases and to declare that title to the billboards had Aautomatically@ vested in BBE.  We hold that
the notice of termination was ineffective because it was not preceded by a
proper notice of default.  See Ogden v.
Gibraltar Savings Association, supra.








Outdoor
Systems refused to vacate the land and continued to operate the billboards and
tender monthly rental payments to BBE who rejected each of the tendered rent
payments.  On May 12, 2000, BBE sent a
letter to Outdoor Systems stating that the leases had terminated because of
numerous defaults by Outdoor Systems. 
However, to remove any misunderstanding, BBE notified Outdoor Systems
that, pursuant to Paragraph 3(b) of the leases, the May 12 letter constituted
Outdoor Systems=s 60-day notice of termination.  The letter stated, AThe Leases shall not renew but shall cease
and expire on the anniversary date thereof, which can in no event be later than
September 1, 2000.@
Outdoor Systems agrees that this was a proper termination of the leases between
the parties.

Outdoor
Systems vacated the land prior to the September 1, 2000, anniversary date and
advised BBE that it was prepared to remove the billboards.  BBE objected to the removal of the
billboards and refused to permit Outdoor Systems to remove the structures.

We reverse
the trial court=s judgment awarding title to the two
billboards to BBE, and we render judgment that the two billboards located on
the separate tracts of real property described in the judgment as Exhibits A
and B are owned by Outdoor Systems and that Outdoor Systems has the right to
remove the two billboards.

In its
conclusions of law, the trial court found that the leases terminated on August
11, 1999, and that Outdoor Systems violated TEX. CIV. PRAC. & REM. CODE
ANN. ' 80.002 et seq. (Vernon 1997 & Supp.
2002) by remaining in possession after that date and by failing to remove
advertising from the billboards after August 11.  The court assessed trespass damages against Outdoor Systems in
the amount of $75,604.58.  We reverse
this award and render judgment that Outdoor Systems is not liable to BBE for
trespass damages because the leases did not terminate on August 11.  The termination letter was ineffective
because it was based upon an insufficient notice of default.

As part of
its damages award, the trial court found that Outdoor Systems was liable to BBE
for unpaid rent of $4,430.13.  Outdoor
Systems does not challenge this finding. 
We, therefore, will modify the trial court=s judgment to provide that BBE recover judgment against Outdoor Systems
in the amount of $4,430.13.

The trial
court awarded BBE attorney=s fees of $75,000.00 through trial and additional attorney=s fees in the event of an appeal.  Outdoor Systems contends that BBE is not
entitled to attorney=s fees
because BBE=s demand was excessive.  A creditor who makes an excessive demand
upon a debtor is not entitled to attorney=s fees for subsequent litigation required to recover the debt.  Collingsworth v. King, 283 S.W.2d 30
(Tex.1955); Ingham v. Harrison, 224 S.W.2d 1019 (Tex.1949).  The court in Findlay v. Cave, 611 S.W.2d 57
(Tex.1981), observed that Collingsworth and Ingham involved
liquidated sums.  However, the court
stated that a party could make an excessive demand for an unliquidated
sum.  The court said:








Certainly one can conceive of circumstances
in which a demand for an unliquidated sum would have to be characterized as
excessive, and attorney=s fees denied.

 

The Findlay court also held:

 

[W]e do not find a sufficient level of unreasonableness
or bad faith to warrant finding excessive demand as a matter of law.

 

We find in the present case, as a matter of law, that the demand made
by BBE in the July 16  letter was an
excessive demand for an unliquidated sum and, thus, discharged any liability
for fees expended thereafter.

BBE=s demand was not for a specific liquidated
sum.  As pointed out earlier in this
opinion, the July 16 letter demanded that Outdoor Systems, within 10 days, pay
BBE an unspecified amount based upon Atotal arrearages from the inception of the Leases.@  The
original lessor and lessee executed the leases in 1987.  Outdoor Systems acquired the leasehold
interest in 1997.  BBE demanded that
Outdoor Systems provide advertising contracts from the inception of the leases.  The leases were forfeited by the trial
court, and title to the billboards was awarded to BBE.  We have reversed that finding.  The trial court found that Outdoor Systems
was a trespasser because it failed to comply with the demand and awarded BBE
$75,604.58.  We have reversed that
finding.  Under our decision, BBE has a
judgment against Outdoor Systems for $4,430.13.  Unlike the court in Findlay, we do find a sufficient Alevel of unreasonableness...to warrant
finding excessive demand as a matter of law.@  

BBE argues that Outdoor Systems cannot rely upon the defense of Aexcessive demand@ because Outdoor Systems failed to expressly
plead the defense.  See Tuthill v.
Southwestern Public Service Company, 614 S.W.2d 205, 212 (Tex.Civ.App. -
Amarillo 1981, writ ref=d n.r.e.).  The record in this
case reveals that, after the evidence closed and before judgment was entered,
the parties filed trial briefs.  In
Paragraph IV of BBE=s
trial brief submitted to the trial court, BBE stated:








Excessive Demand - A creditor who makes an excessive demand
upon a debtor is not entitled to attorneys= fees for subsequent litigation. 
An excessive demand is one which is manifestly unreasonable, or made in
bad faith.  Findlay v. Cave, 611 S.W.2d
57, 58 (Tex.1981).  Where the demand in Findlay
was for more than a jury awarded the close of the trial, the Court found that
was some evidence of excessive demand, but not enough to support the Amanifestly unreasonable@ or Abad faith@
standard.  The court noted that the cases
on excessive demand occurred where the amount in controversy was liquidated and
the creditor made demand for more than it was entitled.  Clearly the testimony in this case shows
that BBE=s demand for a specific sum of money was for
less than the amount due and that its further demand was for an amount that
could reasonably be thought to be within the knowledge and control of Outdoor
Systems.  There is no authority to
support that an excessive demand is otherwise void or vitiated.

 

BBE
did not argue in the trial court that Outdoor Systems had failed to
sufficiently plead the defense.  On the
contrary, it is apparent that the issue was before the court, as evidenced by
BBE=s briefing and argument presented to the
trial court.  We hold that Outdoor
Systems=s Aexcessive demand@ defense to any liability for attorney=s fees was tried by implied consent. 
See City of Los Fresnos v. Gonzalez, 848 S.W.2d 910 (Tex.App. - Corpus
Christi 1993, no writ).  The award of
attorney=s fees, both trial and appellate, to BBE is
reversed; and we render judgment that Outdoor Systems is not responsible for
attorney=s fees.

In its brief, under issues presented, Outdoor Systems states:

[T]his case should be remanded for consideration
of Outdoor Systems=
counterclaims, including its claim for conversion of the billboards.  (Emphasis added)

 

Outdoor
Systems argues that, because the trial court erroneously concluded that BBE=s termination complied with the leases, the
trial court improperly failed to consider Outdoor Systems=s counterclaims.  This was a conventional nonjury trial on the merits.  The judgment provides that Aall relief not expressly granted herein is
denied.@  The
trial court considered the counterclaims, and they were denied.  We overrule Outdoor Systems=s request that its counterclaims be remanded
to the trial court for consideration.








Finally,
Outdoor Systems seeks a remand of this matter to the trial court in order to
seek the recovery of the billboards pursuant to our holding.[2]  It would appear that Outdoor Systems has an
avenue for seeking the recovery of the billboards without the case being
remanded to the trial court.  Texas
courts have long held that a party obtaining any advantage or benefit through a
trial court=s judgment that is later reversed must return
the benefit to the other party. 
Peticolas v. Carpenter, 53 Tex. 23 (1880); Currie v. Drake, 550 S.W.2d
736, 739 (Tex.Civ.App. - Dallas 1977, writ ref=d n.r.e.); Salgo v. Hoffman, 521 S.W.2d 922, 925 (Tex.Civ.App. - Dallas
l975, no writ).  As noted in Salgo v.
Hoffman, supra at 925:

When an erroneous judgment has not been
suspended pending appeal, and the relief granted has already been obtained, the
successful appellant may reclaim what he has been deprived of, and if his
demands are wrongfully resisted, he is entitled to the assistance of the
courts.

 

The
assistance which the successful appellant is entitled to seek from the courts
is characterized as the right of restitution. 
Currie v. Drake, supra at 740 (AThe right of restitution of what one has lost by the enforcement of a
judgment subsequently reversed has long been recognized.@) A party may have restitution upon its own
motion after an evidentiary hearing establishing with certainty what he has
lost.  Currie v. Drake, supra at
740.  Furthermore, the successful
appellant is entitled to seek restitution in the same proceeding without
resorting to a new suit.  Cleveland v.
Tufts, 7 S.W. 72, 74 (Tex.1888); Peticolas v. Carpenter, supra; Baca v. Hoover,
Bax & Shearer, 823 S.W.2d 734, 739 (Tex.App. - Houston [14th Dist.] 1992,
writ den=d); Currie v. Drake, supra at 740-41.  We, therefore, decline Outdoor Systems=s request for a remand of this case in light
of the existing procedure for Outdoor Systems to seek restitution after our
judgment becomes final by the issuance of our mandate.  See TEX.R.APP.P. 18.1(a).

The
judgment of the trial court is reversed and rendered in part; modified in part;
and, as modified, affirmed in part.

 

AUSTIN
McCLOUD

March 20, 2003                                                                       SENIOR
JUSTICE

Panel consists of: Arnot, C.J., and

McCall, J., and McCloud, S.J.[3]











[1]The method used by Outdoor Systems to calculate the
rent had been used for several years by a prior tenant.  None of the prior landlords had
complained.  At trial, Outdoor Systems
attempted to prove an alleged oral modification between a prior tenant and
landlord.  The trial court agreed with
BBE that Outdoor Systems and prior tenants had not followed the contract in the
method used to calculate the rent.  The
trial court found that the alleged modification was invalid.  Outdoor Systems argues that the earlier
conduct of BBE and its predecessors waived, as a matter of law, any claimed
forfeiture arising from payment of reduced rents.  Because we hold that the forfeiture was invalid, it is not
necessary that we reach this argument urged by Outdoor Systems.  TEX.R.APP.P. 47.1.





[2]A supplemental clerk=s
record has been filed in this appeal which details events that transpired after
the entry of the trial court=s judgment on
November 3, 2000.  The supplemental
clerk=s record reflects that BBE conveyed title to the two
billboards and the underlying real property to Sterling Samuel, Ltd. in
December of 2000.  Sterling then sold
the billboards to Lamar Whiteco Outdoor Corporation for $675,000.00.  





[3]Austin McCloud, Retired Chief Justice, Court of
Appeals, 11th District of Texas at Eastland sitting by assignment.